H. G. FITZHUGH *et al.*

(                    *v.*

JOHN T. SMITH.

1. SPECIFIC PERFORMANCE—*who may maintain bill for.* Where the title of a vendee of land is sold under a valid decree against him, the purchaser, upon receiving a master's deed therefor, succeeds to his position as vendee; and, upon complying with the terms of sale, may maintain a bill against the vendor for specific performance.

2. SAME—*what relief, decree.* S sold a lot to H for seven hundred and fifty dollars, on credit, giving a contract for a deed, which was never recorded, reserving the right to declare a forfeiture for non-payment, and making time of the essence. The vendee afterward loaned H three hundred dollars, secured by an assignment of the contract, to enable the latter to erect a building upon the lot, in the progress of which H incurred an indebtedness to F and B for materials. They, uniting with other lien holders, filed a petition to establish a lien on the premises, making the vendor and vendee defendants, alleging in the petition that H held the premises under a contract of purchase from S. The latter suffered the petition to be taken as confessed, and a decree and sale followed of the interest of H in the premises; F and B became the purchasers, and received the master's deed.

After receiving their deed, they tendered to S eight hundred and eighty-five dollars, and demanded a deed; and, upon his refusal, filed their bill for specific performance. The defendant filed no cross bill, asking for affirmative relief. The circuit court, on the hearing, refused to decree that S should execute a deed to complainants upon their payment of the amount of the purchase money found to be due, with interest, but ordered the premises to be sold, and payment out of the proceeds to be made: first, the amount of the purchase money and interest due to S; secondly, the amount of the original lien of F and B; thirdly, to S the amount of his loan to H, and interest; and, finally, to F and B the amount due the other lien holders, which they had paid at their purchase: *Held,* that the decree was erroneous; that no sale should have been ordered; that the complainants having succeeded to the rights of the original vendee, was not entitled to such relief, and that the vendor was not entitled to any affirmative relief; that the complainants were not bound to pay S the sum loaned by him to H; that the proper decree was to require the complainants to pay the amount due upon the contract of sale, with interest, in specie, the contract providing for its payment in gold or its equivalent, within thirty days after entering the decree, and that the master in chancery pay the same over to S upon his executing a proper deed.

3. SAME. A vendor of real estate, whose purchase money is due and unpaid, may file a bill asking a sale of the premises in default of payment, and thus discharge himself of the equities of the vendee; but the vendee has no right to a decree of sale against the vendor for the purpose of paying the unpaid purchase money.

4. SAME—*tender.* Where the complainants in a bill for specific performance have succeeded to the rights of the original vendee, by purchase at a judicial sale, and the vendee's contract of purchase has not been recorded so as to give notice of its terms, it will not be necessary for the complainants, before filing their bill, to make a formal tender of the precise sum due the vendor. It will be sufficient if they offer to perform the contract when the vendor declines to recognize their right to a deed unless they pay him money which he had loaned the vendee.

5. EQUITABLE MORTGAGE. Where the vendor of land, after the sale, loans the vendee money, taking back an assignment of the contract to secure its repayment, with an agreement that it shall be forfeited if the money is not repaid when due, the transaction will be regarded *as an equitable* mortgage.

6. SAME—*lost by laches.* Where the holder of such mortgage, who is also vendor, is made a party defendant in a petition by creditors of the vendee seeking to establish a lien against the premises embraced in the contract as against the vendee, the petition alleging that the vendee holds the land under a contract of purchase from the vendor, and he fails to answer and disclose his rights as such mortgagee, but suffers such creditors to take a de-

cree for the sale of the vendee's interest, and become purchasers at the sale without notice of his secret lien ; the purchasers will succeed to the interest of the vendee, under the original contract of purchase, fully discharged from the lien of the equitable mortgage.

7.  DECREE—*how far conclusive.*   Where a petition to inforce a lien for materials furnished in the erection of a building is filed against the vendee and vendor of land, which alleges that the former holds the premises under a contract of purchase from the latter, and the vendor fails to answer, and a decree is taken and the land sold to the petitioners, this will not prejudice the vendor's right to require payment of the purchase money and interest before parting with the title.   But if he has any other claim upon the land, such as an equitable mortgage or secret lien, and fails to disclose it before decree and sale, the purchaser of the land without notice, will take the land discharged of such secret claim or interest.

8.  FORFEITURE—*vendor and vendee.*   A right of forfeiture, although tolerated, is not favored in courts of equity.   Where the party seeking to inforce such right, by his conduct has misled others, and suffered them to acquire rights in ignorance of his right to declare a forfeiture when called upon to disclose the true state of the facts, a court of equity will not allow him to exact a forfeiture.

9.  SAME—*waiver.*   Thus, where a vendor had, in his contract for the sale of land, reserved the right to declare a forfeiture for con-compliance with its terms, and the contract was not recorded so as to afford notice of its terms, and when made a party defendant in a judicial proceeding against his vendee to establish and enforce a lien, and subject the interest of the vendee to sale, and failed to answer and disclose the terms of the contract and his right to insist on a forfeiture, or even to give notice thereof, but suffered the creditors to proceed to decree, and to advertise the sale of the premises, and then notified them of his intention to declare a forfeiture only three days before the sale, it was held that by his conduct he had waived his right to declare a forfeiture as against the rights of such creditors.

10.  SPECIE CONTRACT.   Where, by the terms of a contract for the sale of land, the purchase money is made payable, with interest, in specie funds, on bill for specific performance against the vendor, the decree, if for the complainants, must require them to pay in specie the sum due on the contract.

WRIT OF ERROR to the Circuit Court of Sangamon County ; the Hon. JOHN A. McCLERNAND, Judge, presiding.

Smith, the defendant in error, on May 28, 1868, sold a lot in Springfield to Hassan for seven hundred and fifty dollars, payable, one hundred dollars on May 28, 1870, one hundred

dollars on May 28, 1871, one .hundred dollars on May 28, 1872, and four hundred and fifty dollars on May 28, 1878, with interest annually at ten per cent, payable in specie funds. Time was made of the essence of the contract. The contract provided, that in case of failure of Hassan, his heirs, or assigns in the performance of all or either of the covenants or promises on the part of Hassan to be performed, Smith should have the right to declare the contract void without notice.

Messrs. J. C. & C. L. CONKLING, for the plaintiffs in error.

Messrs. STUART & BROWN, for the defendant in error.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

On the 28th of May, 1868, Smith, the defendant in error, sold to one Hassan a lot in the city of Springfield for seven hundred and fifty dollars, the first payment falling due in May, 1870, and the last in May, 1878, the interest on the whole sum payable annually. The contract contained a clause of forfeiture. Hassan commenced the erection of a house, and in the progress of the work contracted an indebtedness for materials to Fitzhugh and Bugg, the complainants herein, who, on the 19th of January, 1869, filed a petition to establish a lien, uniting therein with Hopping and Ridgely, who were also lien-holders, and making Hassan and Smith defendants. The petition alleged that Hassan held the premises under a contract of purchase from Smith. Smith was summoned, but made default. On the 1st of June, 1869, the court rendered a decree directing the sale of Hassan's interest in the land for the amount found due the petitioners. A sale was held at which Fitzhugh and Bugg purchased the premises for the amount due to them and to their co-petitioners, and on the 23d of December, 1869, the day of sale, the master in chancery executed to them a deed. On .the 8th of March, 1870, they

tendered to Smith eight hundred and eighty-five dollars as the amount due to him from Hassan, and demanded a deed. He declined to accept the money, and they thereupon filed this bill to compel him to execute a deed.

The circuit court, on the final hearing, did not decree a deed upon the payment of the amount which it found to be due to Smith, but determined the amount and priority of the respective liens, and decreed the sale of the lot for their payment. It ordered the original purchase money and interest to be first paid to Smith, secondly, the amount of their original lien to Fitzhugh and Bugg, then to Smith the amount of a loan made by him to Hassan to secure which he held an assignment of the contract; and, finally, to Fitzhugh and Bugg the amount due under the lien of Hopping and Ridgely which Fitzhugh and Bugg had paid when they bought at the master's sale.

The complainants bring the record here, and insist that the circuit court should either have granted them the relief they asked, or should have dismissed their bill without ordering a sale of the premises.

We are of the opinion that a decree of sale should not have been pronounced on the pleadings as they stand. The complainants were not entitled to such a decree, and their bill was not framed for the purpose of procuring it. A vendor of real estate, whose purchase money is due and unpaid, may file a bill asking a sale of the premises in default of payment, and thus discharge himself from the equities of the vendee; but we know of no principle upon which a vendee can file a bill and obtain a decree of sale against the vendor for the purpose of paying the unpaid purchase money. Here the complainants occupied the position of vendees. They were not entitled to a decree of sale, and did not ask it, and the defendant Smith had filed no cross bill, and was, therefore, entitled to no affirmative relief.

The error of the court consisted in treating this case as in some way a continuation of the petition for the lien. But the questions arising under that petition were then determined, and these complainants, as the purchasers of Hassan's interest

under the decree, had succeeded to his position as vendee. This suit, therefore, is to be regarded as one for specific performance, and the only substantial questions to be determined are, whether the complainants have lost their rights by the forfeiture of the contract declared by Smith on the 20th of December, 1869, and if not, what amount Smith is entitled to receive.

The forfeiture declared, was for non-payment of the first annual instalment of interest, and we are of opinion, the right to declare it for that cause had been waived. This interest was due on the 28th of May, 1869. The decree for the sale of the premises was made on the 1st of June, 1869. Smith was a party to that suit and made default. The contract between him and Hassan was in his custody, and, as appears by the record, was not recorded. The complainants only knew that Hassan claimed under a contract from Smith, but we can not presume they knew all its stipulations. If Smith had answered, disclosing his rights, and setting out the contract, he might have insisted upon his forfeiture if the complainants had neglected to pay the interest when it fell due. But he allowed them to proceed with their suit to a decree, and advertise the sale, and not until the sale was at hand did he notify them of his intention to consider the contract forfeited. A right of forfeiture, although tolerated, is not a favorite in courts of equity, and the mode in which Smith sought to exercise it in this case, can not be permitted. If he did not desire to answer their petition for a lien, he should at least have notified them of the terms of the contract.

It only remains to consider on what basis the amount due Smith should be determined. He claims not only the purchase money due by the contract with Hassan, but also the sum of three hundred dollars loaned by him to Hassan, to assist in building the house, and secured by an assignment of the contract, Hassan agreeing to forfeit it if he did not repay the money by the 1st of January, 1869. Treating this transaction as an equitable mortgage of Hassan's interest in the lot, which it really was, it was clearly the duty of Smith to answer the

complainant's petition for a lien and set up this claim. They knew nothing of it and had no means of knowing. It was a claim resting on a basis altogether different from the right to payment of the purchase money. An answer was not necessary to preserve that right, as the petition stated that Hassan only had an interest under a contract of purchase, and sought only to affect that interest. The decree provided only for the sale of Hassan's interest, but it was his interest under the original contract, and not as affected by a secret lien. If Smith desired to protect that lien, he should have answered and disclosed it. As to that lien he was in the position of a mortgagee of Hassan's interest, claiming under an unrecorded mortgage; and having failed to set it up in that suit, he can not do it now. When the complainants bought under the decree, Hassan's interest or estate, they bought the estate acquired by him under his original contract, and not as incumbered by an unrecorded lien of which they had no notice. If Smith had set up this lien by answer to their petition, the court could have passed upon it and provided for its satisfaction in its proper order. It is now too late. The purchasers under the decree must be protected from injury through the *laches* of the defendant.

It is not important to determine whether the tender was sufficient or not. It was not necessary, to enable the complainants to maintain this bill, that they should make a formal tender of the precise sum. It was enough that they offered Smith to perform the contract, and that he declined to recognize their right to a deed unless they would pay the money loaned by him, and interest.

Smith, however, was not prejudiced by refusing the tender. By the terms of his contract he was not obliged to accept the purchase money before it fell due, except upon thirty days' notice, and this had not been given.

The proper decree will be that Smith shall convey, if complainants pay to the master the amount due upon the contract within thirty days after entering the decree, with interest reckoned to the expiration of the thirty days, according to the

terms of the contract; the money to be paid by the master
to Smith upon his executing a proper deed.

The contract between Smith and Hassan called for payment
in specie.   Under the decisions of the supreme court of the
United States, the decree will require the complainants to pay
in specie the amount due on the contract, in case they elect to
acquire the title.

*Decree reversed.*