**414** ApPELLATE CoURTs oF ILLINOIS.

## A. A. Shobe v. May Luff.

1. CONTRACTS—*Offer and Acceptance—Withdrawal after Accept-ance.*—An answer to a telegram asking a bank to renew a note for thirty days, stating that it " would prefer money if you can raise it conveniently," amounts to an offer to renew the note if the money could not be raised conveniently, which can not be withdrawn after the acceptance unless the amount due on the note could have been conveniently raised.

2. CERTIFICATE OF PURCHASE—*Interest in Real Estate Represented.*— A certificate of purchase does not represent such an interest in real estate as is subject to the levy of an execution, especially before the time for redemption has expired. The holder can not exercise acts of ownership over the premises, simply because he holds the certificate, when his right to a deed has not matured.

3. SAME—*Pledging the Certificate as Collateral Security—Right to Redeem.*—The delivery of a certificate of purchase, to secure an indebtedness, is in the nature of an equitable mortgage of the holder's contingent interest in the land, and not a mere pledge of personal property. The right to file a bill to redeem from such a pledge even after a waiver of the right to redeem contained in the agreement, by which the certificate was pledged, is unquestionable.

4. APPELLATE COURT PRACTICE—*Questions of the Sufficiency of Affidavits.*—Where no motion was made in the court below to dissolve an injunction, on account of the insufficiency of the affidavit to the bill, the question of such sufficiency can not be raised in the Appellate Court.

5. PRACTICE—*Injunctions on Final Hearing—Verification.*—An injunction may be decreed on the hearing of a case, when that is the proper relief, whether the bill is verified or not.

6. SAME—*Waiver of a Demurrer.*—Where a demurrer to a bill is overruled, and the defendant afterward files an answer, he waives his demurrer if the bill is sufficient to support the decree.

7. SAME—*Errors Which do not Affect Appellant's Interests.*—An appellant can not have a decree reversed for errors which do not affect his interests.

**Bill to Redeem, etc.**—Appeal from the Circuit Court, St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the August term, 1895. Affirmed. Opinion filed September 5, 1896.

THOMAS F. FERNS, attorney for appellant.

A pledge is a bailment of personal property as a security for some debt or engagement. Where the thing pledged is

Shobe v. Luff.

a chose in action the term "collateral security" is now most commonly applied to the transaction, but this change of name has worked no change in the law.  18 Am. Eng. Ency. of Law, 588.

If the pledgee of a certificate of purchase under a power of sale conferred upon him makes a *bona fide* sale to one capable of buying, the sale will pass the title to the certificate beyond the pledgor's reach, although it is sold for less than there is due upon the same.  Zimpleman v. Veeder, 98 Ill. 613.

If the owner of property or a chose in action voluntarily clothes another with the *indicia* of ownership, by which the latter is enabled to sell or pledge the same for his own benefit to an innocent party for value, the former can have no relief against such act to the prejudice of the pledgee or vendee.  Where one of two or more persons must suffer loss it must fall upon him whose conduct made it possible for the loss to occur.  Otis v. Gardner, 105 Ill. 436.

A master's certificate of purchase confers upon the holder no title nor interest in real estate.  Bowman v. The People, 82 Ill. 246; Huftalin v. Misner, 70 Ill. 55; Hays v. Cassell, 70 Ill. 669.

Under the statute of Illinois the owner of a certificate of purchase can pass the legal title to it by a written assignment thereon.  Chytraus v. Smith, 141 Ill. 231; McClure v. Engelhart, 17 Ill. 47; Section 29, Ch. 77, Ill. R. S. (1893).

Appellee is estopped from showing that the certificate was not personalty by her own written contract, in which she pledged it as personal property, and authorizes pledgee to sell same at public or private sale.  Osgood v. McConnell, 32 Ill. 74; Ballou v. Jones, 37 Ill. 95; Fahnestock v. Gilham, 77 Ill. 637.

The power of attorney signed by appellee, by its terms having authorized the State Bank to become purchaser at the sale, the said bank, or purchaser, must be deemed to have purchased in its or his own right and in hostility to the pledgor, and can not be held to have purchased in trust for the pledgor.  Anderson v. Olin, 145 Ill. 168.

The affidavits of appellee to the original and amended bills of complaint were wholly insufficient to warrant the issuing of the writ of injunction because they were made before the solicitor of appellee. Pullen v. Pullen (N. J.), 17 Atl. Rep. 310; Schoen v. Sunderland (Kans.), 18 Pac. Rep. 913; 3 Greenleaf on Evidence, Sec. 382 (13th Ed.); Taylor v. Hatch, 12 Johns. (N. J.) 340.

And this irregularity in the jurat may, unless expressly waived, be objected to in any state of a cause. Brabrook Tailoring Co. v. Belding Bros. & Co., 40 Ill. App. 326.

JESSE M. FREELS and R. D. W. HOLDER, attorneys for appellee.

The interest of a purchaser at a judicial sale under certificate of purchase is at least that of a lienor. Rockwell v. Servant, 63 Ill. 424; Curtis v. Millard, 14 Iowa, 128; 81 Am. Dec. 460, and note.

And is, therefore, an interest in the real estate. Jones on Mortgages, Sec. 1661, and notes; Welch v. Dutton, 79 Ill. 435; Roberts v. Clelland, 82 Ill. 538; Chicago, B. & Q. R. R. Co. v. Chamberlain, 84 Ill. 350.

The certificate of purchase having been pledged to secure a debt, and being itself the evidence of title to real estate, amounts to the pledging of land for debt, and is, therefore, an equitable mortgage. 6 Am. & Eng. Ency. of Law, 681.

An assignment of a contract for the purchase of land by the vendee, as security for debt, is treated as a mortgage. 6 Am. & Eng. Ency. of Law, 682; 1 Jones on Mortgages, Sec. 172; Fitzhugh v. Smith, 62 Ill. 486; Dwen, Exr., v. Blake, Exr., 44 Ill. 135; Baker v. Bishop Hill Colony, 45 Ill. 264; Allen v. Woodruff, 96 Ill. 11.

And so as to the assignment of a certificate of purchase of land as a security for the payment of a debt, as in the case at bar. Hill v. Elred, 49 Cal. 398; Stover v. Bounds, 1 Ohio St. 109; Case v. McCabe, 35 Mich. 100; Gamdeman v. Gunnison, 39 Mich. 313; Mowry v. Wood, 12 Wis. 413; Jarvis v. Dutcher, 16 Wis. 326; Dodge v. Silverthorn, 12 Wis. 644; Crumbaugh v. Smock, 1 Blackford, 305; Chadwick

v. Clapp, 69 Ill. 119; Welch v. Dutton, 79 Ill. 465; Roberts v. Clelland, 82 Ill. 538; Chicago, B. & Q. R. R. Co. v. Chamberlain, 84 Ill. 333.

The assignee of a certificate of purchase takes it subject to all equities of the former owner. Smith v. Huntoon, 134 Ill. 31; Haworth v. Taylor, 108 Ill. 276; Roberts v. Clelland, 82 Ill. 538.

And so the assignee of a promissory note, secured by mortgage or deed of trust, though taking before maturity, does not occupy the position of an assignee of commercial paper, as respects the mortgage security, but takes and holds the mortgage subject to all the equities that might be urged against it in the hands of the original holder. Shippen v. Whittier, 117 Ill. 282; Mutual Mill Ins. Co. v. Gordon, 121 Ill. 375.

The name of the assignee must be in the indorsement on the certificate. The transaction was an equitable mortgage. Mowry v. Wood, 12 Wis. 428.

The transaction constituted an equitable mortgage of an interest in real estate. The rule of law is, "once a mortgage always a mortgage." Life Ins Co. v. White, 106 Ill. 67; Heirs of Stover v. Heirs of Bounds, 1 Ohio St. 109.

"Every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." R. S. Ill. 1893, Chap. 95, Sec. 12.

The rule is familiar that it is competent, in a court of equity, to show, by parol, that an instrument purporting on its face to be an absolute conveyance of real estate, is, in fact, but a mortgage. The question is one of intention, to be ascertained from all the circumstances in evidence; and if it shall appear, no matter what the form of the transaction, that the conveyance is, in fact, but an indemnity or security, it will be held a mortgage, and the character of liability against which indemnity is intended, or the kind or dignity of indebtedness intended to be secured, is unimportant. Workman v. Greening, 115 Ill. 479; Tillson v.

Moulton, 23 Ill. 648; see also Mowry v. Wood, 12 Wis. 413;
Jarvis v. Dutcher, etc., 16 Wis. 326; Dodge v. Silverthorn,
etc., 12 Wis. 644; Hill v. Eldred, 49 Cal. 326; Heirs of Sam-
uel Stover v. Heirs of William Bounds, 1 Ohio St. 109; Case
v. McCabe, 35 Mich. 102; Gunderman v. Gunnison, 39 Mich.
313; Crumbaugh v. Smock, 1 Blackford 305; Sandford et al.
v. Kane, 133 Ill. 199; Hays v. Cassell, 70 Ill. 669; Huftalin
v. Misner, 70 Ill. 57; Bowman v. The People, use, etc., 82
Ill. 246; Chicago, B. & Q. R. R. Co. v. Chamberlain, 84 Ill.
349, 350.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE
COURT.

In 1892 there was a contest in the Circuit Court of St.
Clair County, between appellee on the one side, and S. H.
Bowman, John B. Lovingston and appellant, Dr. A. A. Shobe,
on the other side, as to the priority of their liens on the
lands involved in this suit. A decree was rendered finding
that appellee's was the prior lien and ordering the lands to
be sold by the master in chancery, and the purchase money
to be applied, first, to the payment of costs, then to the
payment of the amount due appellee, and after that to the
payment of the amount due the other lienors. The lands
were sold under this decree, on December 24, 1892, to ap-
pellee for $2,033.89, the amount of her lien and costs of
suit. She received the usual certificate of purchase from
the master, providing for the making of a deed in case the
premises should not be redeemed according to law.

In January, 1893, appellee was desirous of procuring a
loan for $1,000 and of using her certificate of purchase as
security therefor. Lovingston had a certain certificate of
title in his possession which would be serviceable in procur-
ing the loan, and Mahlon H. Luff, appellee's husband, who
transacted the business for her, went to Lovingston's office
to obtain this certificate of title. Lovingston volunteered
the statement that the State Bank of Jerseyville would lend
the money on the certificate of purchase as security. Now
Bowman was president of this bank, which was located at

Jerseyville, Illinois, and Lovingston's office, where this conversation occurred, was in the city of East St. Louis, in which city Lovingston and the Luffs resided, and the lands above were situated.

Luff wanted to borrow the money for six months, but Lovingston told him that the bank would not discount a note for more than ninety days, but would renew the note at the expiration of that time, so as to carry the loan in fact for six months. The note was executed by the Luffs, and the certificate of purchase was indorsed by them in blank. At the same time a separate instrument was executed by the Luffs, which instrument is as follows:

"Having executed a promissory note, dated at East St. Louis, Ill., on the 18th day of January, 1893, for $1,000, payable to the State Bank of Jerseyville, or order, ninety days after date, with interest from maturity at the rate of seven per cent per annum, and being desirous of securing the same and all my other liabilities to said bank now existing or which may hereafter arise, I do hereby pledge to said bank and its assigns, as collateral security for said notes and other liabilities, one certificate of master's sale of the St. Clair County Circuit Court, in chancery, wherein May Luff was plaintiff and William S. Long and others were defendants, which said certificate of purchase is indorsed by May Luff in blank, with authority to the indorsee to make such legal assignment above her name as to fully transfer to such indorsees all her right, title and interest in said certificate of purchase and in the lands therein described, and agree to give additional security to keep up the present margin, whenever the market of the above collaterals should decline, and on notification of the holder of this liability, to be within twenty-four hours after receipt of said notice. In default of payment of said note or other liability at maturity, or in default of my giving such additional security when so notified, I do hereby authorize said bank, its officers, or the holder of such liability, to sell, or cause to be sold, said collaterals, at public or private sale, at the option of the holder, with or without notice to me, or the

public, at the Merchants' Exchange in St. Louis, or else-
where, and to apply the proceeds, first, to the payment of
expenses incurred by said sale, and next to the discharge, in
part or whole, of any of my liabilities hereby secured, the
holders of such liability to have the option of application.
Any surplus left shall be paid to me. If the proceeds of such
sale are not sufficient to pay all my liabilities hereby secured,
I agree to pay the balance on demand.   In case of a sale of
said collaterals, said bank, or the holder of any liability
hereby secured, may become the purchaser thereof, without
any right of redemption on my part.

<div align="right">MAY LUFF.

MAHLON H. LUFF."</div>

Appellant, who was in East St. Louis at the time, gave
the following receipt for the foregoing papers:

"East St. Louis, Ill., Jan. 16, 1893.—Received of M. H.
Luff one note for $1,000, secured by a note of Mrs. May
Luff and the assignment of a certificate of purchase for
lots in Rutledge and Horton's Addition to East St. Louis—
and in case said note, payable to the State Bank of Jersey-
ville, Ill., will be accepted by said bank, I will place $1,000,
less seven per cent int. for ninety-three days, to the credit
of Mr. John B. Lovingston."

Dr. Shobe claims that he did not know the contents of
this receipt when he signed it, and that his only connection
with the transaction was the carrying of the certificate of
purchase to the Jerseyville Bank, so that the bank could
determine whether to make the loan or not.   It is further
claimed that the bank notified Lovingston that it would
make the loan, and that, at the instance of Lovingston, a
draft was drawn on the Jerseyville Bank through a bank at
East St. Louis, and cashed by the latter, on Lovingston's
guaranty, for $1,000, less interest for ninety-three days, and
that the note and power to sell were attached to the draft
and forwarded to the Jerseyville Bank.

When the note matured appellee sent to the bank $6.40,
the amount of interest necessary to extend the time of pay-
ment for thirty-three days.   This was accepted, and the
time of payment was extended to May 18–21.

On May 10th Luff wrote to the bank asking for an extension of time to July 18th, and offering to pay the interest in advance.

On May 11th Bowman, as president, answered that he would *prefer* not to renew the note—that money was close, and the bank was reducing its loans.

On May 12th Luff replied, asking for an extension of time for thirty days.

On May 16th Bowman wrote as follows: "In reply to yours of recent date, will say that we are desirous of collecting in some of our loans, and would *prefer* not to extend your note."

On the same day Luff telegraphed to Bowman as follows: " Will you extend note for thirty days ?   Answer at once."

Thereupon Bowman telegraphed to Luff: " Would *prefer* money, if you can raise it *conveniently*."

On May 18th Luff sent $6.40 to Bowman, stating in the accompanying letter that the money was for interest on the note; that the high water had made money scarce—otherwise, he would have sent the money sooner; and that he would pay the note at or before the expiration of the thirty days.

At the bottom of this letter Bowman wrote: "We want the note paid, and do not care to renew it, as money is scarce with us," and mailed the missive to Luff.

On May 20th Luff telegraphed: " Will you give me a week to take up the note?" and on the same day wrote a letter to Bowman, which is as follows: "I was somewhat surprised to receive back the interest on my note, as Lovingston had told me he had made arrangements with you for a ninety-day extension when I gave the note, making it due July 18–21, and as your telegram stated you only *preferred* to have the money (I) thought you would extend thirty days.   I had made arrangements to dispose of the same and could have raised money sooner.   Under these circumstances you will grant me time enough to raise the money to take it up, will you not?   If I had a few days, can raise the same."

Luff received no answer to this telegram or letter.

On May 25th Luff went to Jerseyville to see Bowman, and was informed that the latter had gone to the World's Fair, and that the certificate of purchase had been sold that very day to appellant, at private sale, for the consideration of $1,000. Luff saw appellant, and endeavored to make arrangements to pay the note and redeem the certificate; but appellant said that he could not do anything until Bowman's return from the World's Fair, which would be within two or three weeks; that he and Bowman had bought this certificate to protect themselves. It will be remembered that Bowman and Shobe had a lien on the premises established by a decree under which they could have redeemed the premises from the master's sale. According to Bowman's statement, they had taken this method of protecting themselves, doubtless regarding it as being preferable to a redemption. And preferable it was, for the premises were worth four or five thousand dollars, and the two could make at least $1,000 more by buying the certificate than by redeeming.

Before this suit was commenced appellee made a sufficient tender to appellant of the amount due him, but appellant refused to accept the tender or to surrender the certificate.

The bill in this case was filed by appellee for the purpose of redeeming the certificate of purchase from the sale thereof to Shobe, and contains an offer to pay whatever may be equitably necessary in order to effect such redemption. The decree finds that the delivery of the certificate of purchase to the bank was an equitable mortgage of appellee's contingent equitable interest in the lands therein described and orders the payment to appellant of $1,000, with seven per cent per annum interest thereon from May 25, 1893, to the date of payment, and also the repayment to appellant of a certain amount paid to redeem the premises from a sale for taxes, together with interest thereon, and then orders that, upon such payments being made, the certificate of purchase be surrendered to appellee.

Appellant contends that this decree is erroneous and should be reversed.

The statement of facts above made, strengthened by a multitude of details appearing in the record, shows that an unconscionable wrong has been done to appellee. If she is, indeed, remediless, the law is lamentably defective.

We are of the opinion that the telegram from Bowman to Luff, which stated: "Would *prefer* money if you can raise it *conveniently*," which was an answer to Luff's telegram asking the bank to renew the note for thirty days, amounted to an offer to renew the note if the money could not be raised conveniently, which could not be withdrawn after prompt acceptance and tender of interest, unless the whole amount due on the note could have been conveniently secured. Manifestly, Luff could not raise the money conveniently, and when he sent the interest to the bank the contract for an extension of time was completed.

But the right of redemption does not rest necessarily on the soundness of this position. On May 20th, appellee, having received an emphatic declaration that the note must be paid, asked for one poor week in which to make the payment, and received not so much as an answer to this request. Five days thereafter—on the very day when Luff went to Jerseyville to make arrangements to pay the note—the certificate was sold. Bowman had written and telegraphed that he would prefer to have the money—he had telegraphed that he would prefer to have it if it could be raised conveniently—thus leading appellee to believe that some indulgence would be granted her, and under the circumstances he ought not to be permitted to withdraw this offer of indulgence without giving a reasonable time within which to prepare for the full payment of the note. Such a reasonable time was not granted, and the bank had no right to sell the certificate on May 25th, notwithstanding the cut-throat language of the power of sale.

Shobe was bound to take notice of the equities existing between the makers and payee of the note. He knew that the certificate of purchase was held by the bank as security merely, and that the note secured thereby was overdue by its terms. He knew that the certificate was indorsed in

blank, and that the legal title had not passed by such indorsement, and that whatever equitable defenses could be interposed as against the bank could also be set up as against the purchaser. Olds v. Cummings, 31 Ill. 188; Roberts v. Clelland, 82 Id. 538; Chytraus v. Smith, 141 Id. 231. Moreover the evidence authorizes the conclusion that the purchase by Shobe was for the benefit of himself and Bowman. There is evidence tending to show that both Shobe and Bowman stated this to be the fact, and this is in harmony with the presumption that Bowman would not magnanimously surrender to Shobe his interest in the lien of the two men on the premises. In any view of the case Shobe is chargeable with notice of the dealings between Luff and Bowman with reference to the renewal of the note.

Another theory, that advanced by the chancellor, may be sustained both by reason and authority. The decree finds that this transaction is an equitable mortgage of appellee's contingent equitable interest in the lands. If this finding is correct, the right of redemption can not be denied.

It is argued by appellant that a "master's certificate of purchase confers upon the holder no title or interest in real estate;" that such a certificate is personalty, and the subject of a pledge as collateral security; that a sale thereof to satisfy the debt which it secures passes the absolute title to the vendee; and that a bill to redeem from such a sale can not be maintained. Neither of these propositions is the law under the facts and circumstances of this case.

The authorities, to show that the certificate of purchase is personal property, are Huftalin v. Misner, 70 Ill. 55; Hays v. Cassell, 70 Id. 669; and Bowman v. The People, 82 Id. 246.

Under these authorities it is undoubtedly the law that a certificate of purchase does not represent such an interest in real estate as to be subject to the levy of an execution, especially before the time for redemption has expired, and that the holder of such a certificate can not exercise acts of ownership over the premises, simply because he holds the certificate, when his right to a deed has not matured. But

the question before us was not involved or passed upon in either of those cases. It is true that language was used in the case of Bowman v. The People which might be stretched so as to cover this case. But if the language is considered in its relation to and bearing upon the real question involved, it will be found that the Supreme Court has not decided that the use of a certificate of purchase as security is a mortgage or pledge of personalty, and not an equitable mortgage of a contingent equitable interest in lands. That may be a fixture as between vendor and vendee which is not a fixture as between landlord and tenant. And so a certificate of purchase may not represent an interest in real estate when the sheriff comes with an execution, but may represent such an interest when the mortgagee thereof attempts to sell it for the satisfaction of his claim.

There are authorities which support this view of the law.

When the vendee assigns a contract for the purchase of land as security for a loan, the transaction is regarded as an equitable mortgage. The rules applicable to a mortgage of real property govern the transaction, both as to the effect of the assignment and the mode of enforcing the lien. 1 Jones on Mortgages, Sec. 172; Jackson v. Green, 4 Johns. (N. Y.) 186; Smith v. Lackor, 23 Minn. 454; Fitzhugh v. Smith, 62 Ill. 486.

Although the contract of sale be conditional, the purchaser has an interest, before the performance of the things to be done on his part, which he may assign by way of security. 1 Jones on Mortgages, Sec. 174; Curtis v. Buckley, 14 Kans. 449.

The assignment of a certificate of purchase of public lands issued by a State operates as an equitable mortgage when intended to secure a debt due from the assignor to the assignee. Such is the law also as to the assignment of school land certificates which are, by their terms, transferable by assignment and delivery. Stover v. Bounds, 1 Ohio State, 107; Mowry v. Wood, 12 Wis. 413; Dodge v. Silverthorn, 12 Id. 644; Jarvis v. Dutcher, 16 Id. 326; Case v. McCabe, 35 Mich. 102; Gunderman v. Gunnison, 39 Id. 313.

The interest of the holder of a certificate of purchase is at least that of a lienor. 2 Jones on Mortgages, Sec. 1661. It is an incipient interest, which may or may not ripen into an absolute estate. Roberts v. McClelland, 82 Ill. 538; C.,B. & Q. R. R. Co. v. Chamberlain, 84 Id. 333; Edwardsville R. R. Co. v. Sawyer, 92 Id. 377.

In view of the foregoing authorities, we are of the opinion that the delivery of a certificate of purchase to secure an indebtedness is in the nature of an equitable mortgage of the holder's contingent interest in the land, and not a mere pledge of personal property. This being true, the right to file a bill to redeem from the sale to appellant is unquestionable, notwithstanding the waiver of the right of redemption in the power of sale. 2 Jones on Mortgages, Sec. 1039; 2 Story on Eq. Juris., Sec. 1019; Wyncoop v. Cowing, 21 Ill. 570; Preschbaker v. Feaman, 32 Id. 475; Willets v. Burgess, 34 Id. 494.

Having disposed of this case on the merits, we proceed to notice briefly certain propositions of a technical nature which have been advanced in the argument.

It is said that the affidavit to the bill was not sufficient to authorize the issuance of a temporary injunction. The injunction was to restrain the master in chancery from making a deed to appellant, and had fully served its purpose when the decree appealed from was rendered. No motion to dissolve the injunction was made at any time in the lower court, and the question of the sufficiency of the affidavit is not before us for consideration. Of course, it is well known to the members of the bar that an injunction may be decreed on the hearing of a case when that is the proper relief, whether the bill is verified by affidavit or not. Hawkins v. Hunt, 14 Ill. 42.

We need not consider the action of the court in overruling the general and special demurrer to the amended bill, inasmuch as appellant afterward filed an answer, and the bill is sufficient in substance to support the decree.

It is said that it was error to order the State Bank of Jerseyville to surrender the note for $1,000 to appellee

when four days' interest thereon remained unpaid.  The State Bank, not having appealed, is, presumably, satisfied with the decree, and appellant can not have the decree reversed for alleged errors which do not affect his interests.

The decree is affirmed.