# Digestive Ferments Company v. American Chemical Laboratories, Appellant.

*Contracts—Illegal sales—Federal Food and Drug Act—Affidavit of defense—Sufficiency.*

Courts will not lend their assistance to the enforcement of contracts which are in violation of law.

In an action of assumpsit for certain drugs sold and delivered in interstate commerce an affidavit of defense is sufficient which avers that the drugs were misbranded under the Federal Food and Drugs Act and did not have the strength required by the United States Pharmacopeia and were but one-third the strength required by such standard.

Such an averment is sufficiently explicit to prevent a summary judgment and send the case to a jury. Fair intendment should be given an affidavit which sets up the defense that the plaintiff's claim or part of it is based on a violation of statute. An affidavit of defense is not an indictment and does not require the precision necessary for an indictment.

· Argued December 12, 1922.   Appeal, No. 293, Oct. T., 1922, by defendant, from judgment of Municipal Court of Philadelphia, March T., 1922, No. 105, in favor of plaintiff for want of a sufficient affidavit of defense in the case of Digestive Ferments Company, a corporation, v. American Chemical Laboratories, a corporation. Before POR-TER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Reversed.

Assumpsit for goods sold and delivered.

Rule for judgment for want of a sufficient affidavit of defense.

The facts are stated in the opinion of the Superior Court.

The court made absolute the rule.   Defendant appealed.

*Error assigned* was the order of the court.

*W. Horace Hepburn, Jr.,* for appellants.

*James Yearsley,* and with him *Illoway & Felix,* for appellee.

OPINION BY KELLER, J., March 2, 1923:

The affidavit of defense filed in this case might have been more definite and explicit in a number of particulars. But we think it fairly alleges a violation by the plaintiff of the Federal Food and Drugs Act (Act of Congress of June 30, 1906, c. 3915, 34 Stat. 768; U. S. Comp. Stat., sections 8717-8724; Barnes Fed. Code, sections 8334-8340) with respect to two of the items for which recovery is sought in this action, and if so, it constituted a good defense as to those items. Whenever it appears that the plaintiff's claim rests upon an illegal foundation, the court will not lend its aid to enforce it: Snaman v. Maginn, 77 Pa. Superior Ct. 287; Columbia Bank & Bridge Co. v. Haldeman, 7 W. & S. 233; Johnson v. Hulings, 103 Pa. 498; Vandegrift v. Vandegrift, 226 Pa. 254; Blandi v. Pellegrini, 60 Pa. Superior Ct. 552.

The act of Congress, supra, prohibits the introduction into any state from any other state of any article of food or drugs which is adulterated or misbranded within the meaning of the act; and makes it a misdemeanor for any one to ship, or deliver for shipment, such adulterated or misbranded article from one state to another. It defines the term "drug" to include, inter alia, all medicines and preparations recognized in the United States Pharmacopeia or National Formulary, for internal or external use; and enacts that for the purpose of the act a drug shall be deemed to be adulterated if, when sold under or by a name recognized in the United States Pharmacopeia or National Formulary it differs from the standard of strength, quality or purity, as determined by the test laid down in the United States Pharmacopeia

or National Formulary official at the time of investigation.

The plaintiff's action was for goods sold and delivered as per book account, and the statement showed their shipment by the plaintiff from Detroit, Mich., to the defendant at Philadelphia. Included in the items in suit were two liters, Liquor Hypophysis, invoiced at $100.18. The affidavit of defense alleged that these goods were "misbranded" under the Federal Food and Drugs Act in that they did not have the strength required by the United States Pharmacopeia, (U. S. P.), and were but one-third the strength required by such standard. Whether this alleged a technical "misbranding" within the 8th and 9th sections of the act of Congress aforesaid, or not, it set up an unlawful act by the plaintiff,—the shipment of an adulterated drug, within the meaning of the act, and contrary to its provisions,— and while it might have been more clearly and concisely stated, we think it was sufficiently alleged to prevent a summary judgment and send the case to a jury: Lengert v. Chaninel, 205 Pa. 280. Courts should not be astute in assisting the manufacturer or shipper of drugs, adulterated in violation of law, to recover the fruits of his illegal act. Fair intendment should be given an affidavit which sets up the defense that the plaintiff's claim or part of it is based on a violation of statute. If it states facts that amount to an adulteration, prohibited by law, we are not disposed to quibble because it was mistakenly termed a misbranding.

If a standard is fixed for Liquor Hypophysis in the United States Pharmacopeia, it follows that it is recognized therein. To say that a substance sold as Liquor Hypophysis, and shipped from Michigan to Pennsylvania, did not have the strength required for it by the United States Pharmacopeia standard, is, fairly considered, equivalent to a statement that it differed from the standard of strength, quality or purity, as determined by the test laid down in the United States Phar-

macopeia; and the percentage of adulteration (two-thirds) was stated definitely enough. Neither the court below nor this court would have been enlightened very much more if the affidavit had averred, as the appellee contends it should, that Liquor Hypophysis is defined in the United States Pharmacopeia to be, "solution of the pituitary body,—a solution containing the water soluble principle or principles from the fresh posterior lobe of the pituitary body of cattle"; and that its strength as determined by the test laid down therein was, "one mil of Solution of Hypophysis diluted 20,000 times has the same activity on the isolated uterus of the virgin guinea-pig as a 1 to 20,000,000 solution of beta-iminazolyl-ethylamine hydrochloride, when tested as directed by the United States Hygienic Laboratory." It was quite sufficient to refer to the standard fixed by Congress and say it was only one-third the strength required by that standard. An affidavit of defense is not an indictment and it does not require the precision necessary for an indictment.

Nor is the validity of the defense affected by the fact that the adulteration of the drug was not discovered until several months after its delivery. The question is not one of acceptance. A sale which is void, because illegal, does not become valid, because the illegality is not discovered for a considerable space of time. Intoxicating liquors, sold contrary to law, cannot be recovered for, even if accepted and drunk. The sale is void and lapse of time does not give it validity or vitality.

The rule for judgment was not entered until after the case was on the trial list and had been continued and the costs taxed. It might well have been dismissed as having been filed too late: O'Neal v. Rupp, 22 Pa. 395; Bordentown Banking Co. v. Restein, 214 Pa. 30; Superior National Bank v. Stadelman, 153 Pa. 634; Thompson v. Donaldson, 43 Pa. Superior Ct. 585. The general damages claimed in the affidavit of defense by way of set-off or counterclaim are not of a character to support

an action of assumpsit, nor are they averred with sufficient clearness and particularity, and, therefore, cannot be sustained as a counterclaim in this action: Dunn v. Pittsburgh Jewelry Mfg. Co., 43 Pa. Superior Ct. 551; Appleby v. Barrett, 28 Pa. Superior Ct. 349. In so far, however, as the entire affidavit supports the averment of plaintiff's illegal sale and delivery of adulterated drugs, it may be considered as matter of defense to such items.

The judgment is reversed with a procedendo.