# Highland, Appellant, *v.* Russell Car and Snow Plow Company.

*Contracts—Illegal contracts—Fixed price of coal—Lever Act— Act of Congress, (Act of August 10, 1917, c 53, 40 St. L. 276 284),— War power—Judgment non obstante veredicto.*

In an action of assumpsit for the purchase price of coal, the court properly entered judgment non obstante veredicto in favor of the defendant, where it appeared that the contract was entered into subsequent to the passage of the Lever Act, (Act of August 10, 1917, c 53, 40 St. L. 276, 284), under which the President, by Executive Order, fixed the maximum price of coal; that the contract price was greater than the price fixed pursuant to the Lever Act; and that the defendant paid the price fixed by the Executive Order.

The contract which the parties made was void, it being in violation of the plain mandate of the Executive Order issued pursuant to the Lever Act. Whenever it appears that plaintiff's claim rests upon an illegal foundation, the court will not lend its aid to enforce it.

The Lever Act and the President's action thereunder, fixing the price of coal, was a lawful exercise of Congressional authority under the implied war power.

The fixing of a price at which a commodity may be sold is not a taking, nor does it require a party to give up his property without adequate compensation.

Argued October 26, 1925. Appeal No. 82, October T., 1925, by plaintiff, from judgment of C. P. Clearfield County, September T., 1921, No. 427, in the case of V. L. Highland v. Russell Car and Snow Plow Company. Before Porter, Henderson, Trexler, Keller, Linn and Gawthrop, JJ. Affirmed.

Assumpsit for the purchase price of coal. Before Heck, P. J., 55th Judicial District Specially Presiding.

The facts are stated in the opinion of the Superior Court.

Verdict for the plaintiff in the sum of $1,070.06. Subsequently the court, on motion, entered judgment non obstante veredicto in favor of the defendant. Plaintiff appealed.

*Error assigned* was the granting of defendant's motion for judgment non obstante veredicto.

*Lisle D. McCall,* and with him *N. F. Womer,* for appellant.—The government did not have the right to fix the price of coal: United States v. Cohen Grocery Co., 255 U. S. 88; Ex Parte Milligan, 71 U. S. 2, 120; United States v. Lynah, 188 U. S. 445, 465; Monongahela Nav. Co. v. United States, 148 U. S. 312, 325; U. S. v. Chandler-Dunbar Co., 229 U. S. 53, 80; U. S. v. First National Bank, et al., 250 Fed. 299, 301; Kamakanui v. United States, 244 Fed. 923, 924.

*A. M. Liveright,* and with him *John M. Chase, 3rd,* for appellee.—The fixing of the price of coal was the proper exercise of Congressional authority: Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U. S. 146; G. B. Newton Coal Co. v. Davis, Director General, 281 Pa. 74; National City Bank v. U. S., 275 Fed. 855, 281 Fed. 754.

OPINION BY GAWTHROP, J., February 26, 1926:

This is an action of assumpsit for the purchase price of coal delivered by plaintiff to defendant under a contract made in October, 1917, a time subsequent to the date of the passage by Congress of the Fuel and Food Control Act (Act of August 10, 1917, c. 53, 40 St. L. 276, 284), hereinafter called the Lever Act, and subsequent to the date of the Executive Order of August 21, 1917, fixing the prices of bituminous coal at

the mine in the several coal producing districts under Section 25 of the Act, which so far as is necessary for our consideration reads: ''The President of the United States ...... is hereby authorized and empowered, whenever and wherever in his judgment necessary for the efficient prosecution of the war, to fix the price of coal and coke, (etc.) ; ...... during the war or for such part of said time as in his judgment may be necessary.'' The coal which is the subject of the suit was shipped between October 23, 1917 and February 14, 1918. The contract price was $3.60 per net ton f. o. b. mine. By virtue of the Lever Act, the President of the United States, by a proclamation dated August 21, 1917, fixed the price of bituminous coal in the region in which this coal was sold at $2 per net ton. By a proclamation of October 27, 1917, the price was fixed at $2.45 per net ton, the latter price remaining in effect until after the last shipment of coal involved in the case. Defendant fully paid plaintiff for the coal, if the price recoverable is that fixed by the above Executive Orders. The suit was for the difference between the amount paid and the contract price. Plaintiff recovered a verdict in the court below, but the trial judge sustained defendant's motion for judgment n. o. v. on the ground that the price of coal fixed pursuant to the Lever Act was controlling. There is presented to us, therefore, the question whether this ruling was correct. We are constrained to hold that the ruling must be sustained on two grounds.

(1) The Lever Act and the President's action thereunder fixing the price of coal was a lawful exercise of Congressional authority. While as yet it has not been determined that there exists in the Government an unlimited right to fix prices for all commodities, during the war the authority to fix prices and provide exclusive regulation was extended to all commodities. The right was based on what has been generally

termed implied "war power": G. B. Newton Coal Co. v. Davis, Director General, 281 Pa. 74, 80. Appellant contends that the statute violates the "contract" clause and the "due process" clause of the Federal Constitution. Even in times of peace private contract rights must yield to the public welfare where the latter is appropriately declared and defined and the two conflict: Union Dry Goods Co. v. Georgia Public Service Commission, 248 U. S. 372; Armour Packing Co. v. U. S., 209 U. S. 56; Hudson County Water Co. v. McCarter, 209 U. S. 349. "Freedom of contract is a qualified, and not an absolute, right. There is no absolute freedom to contract as one chooses. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulation": Chicago B. & Q. R. Co. v. McGuire, 219 U. S. 549. "Contracts must be understood as made in reference to the possible exercise of the rightful authority of the Government, and no obligation of a contract can extend to the defeat of legitimate government authority": L. & N. R. R. Co. v. Mottley, 219 U. S. 467, 482. Neither the "contract" clause nor the "due process" clause of the Federal Constitution has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort or general welfare of the community; and all contract and property rights are held subject to the fair exercise of the police power: Atlantic Coast Line R. Co. v. Goldsboro, 232 U. S. 548, 558. There would seem to be even greater justification for interference with contract and property rights of individuals under the war power. It was held in Lajoie v. Milligan, 242 Mass. 508, that "a state of war, however, may affect with a public interest articles which, under normal conditions, are subject to free commerce in its usual channels, and thus render subject to governmental regulation that which otherwise would be

unobstructed and unhindered by the law.'' Congress has full power to enact any legislation necessary to carry a war to a successful conclusion. It is the judge of the necessity and expediency: Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U. S. 146. In that case it was held that it was permissible for Congress, in the public interest and during a state of war, to deny an owner of property the right to engage at all in a particular business. A fortiori, to accomplish the same end it must be lawful for Congress to provide that one may continue in a certain business only upon terms defined. The Lever Act does not prohibit the sale of coal, but merely limits the exercise of the right of sale by prescribing a fair price at which it may be sold during the war. The war was in progress during the period of the sale and purchase of the coal here involved. It was not contended in the court below and it is not contended here that the selling price of coal fixed by the Government was unfair or unreasonable, or that plaintiff did not receive reasonable and adequate compensation for the coal sold. The sale of the coal was made subsequent to the effective date of the regulations fixing the maximum prices for bituminous coal. If the price fixed was not satisfactory to plaintiff, he was not required to sell. There was no taking of his property by the Government. The transaction was voluntary and not hostile. If the Government had seized plaintiff's coal, it would be bound to pay him just compensation, which is the market value of the coal: G. B. Newton Coal Co. v. Davis, Director General, supra; U. S. v. New River Collieries, 262 U. S. 241. But the fixing of prices at which property may be sold is not a taking in invitum. There is no merit in appellant's contention that the Lever Act undertook to invest the President with power to function judicially by fixing the value of coal without affording the owner an opportunity to be heard. The contention

would have force if the act undertook to authorize the President to fix the value of property which the Government appropriated for its own use. Fixing a price at which a commodity may be sold is not a taking. Nor does it require a party to give up his property without adequate compensation. We have examined all of the cases cited by appellant and find that none of them are in conflict with our conclusion.

(2) This appeal must fail for another reason. The contract which the parties made was void, because it was in violation of the plain mandate of the Executive Orders issued pursuant to the Lever Act. Whenever it appears that the plaintiff's claim rests upon an illegal foundation, the court will not lend its aid to enforce it: Digestive Ferments Co. v. Am. Chemical Laboratories, 80 Pa. Superior Ct. 373, and cases therein cited. The Executive Order fixing the price at which coal could be sold in the several coal producing districts was binding upon the seller and the purchaser. When these parties entered into a contract in violation of the order, they were in pari delicto. According to well settled principles and upon authorities too well known to require citation, the law will leave them where it finds them.

The assignments of error are overruled, and the judgment is affirmed.