## Goldman v. Kaplan

*Benjamin H. Hellman*, for plaintiff.
*Herman Moskowitz*, for defendant.

WINNET, J., October 10, 1944. — Plaintiff has brought suit on a contract dated October 15, 1942, for alterations to premises 717 West Tioga Street, Philadelphia, the amount of such alterations to cost $1,160. The statement of claim alleges a failure on the part of

defendant to complete the contract and defective performance in 20 separate items. There is also a claim for rental value of the premises due to the delay in performance. The affidavit of defense denies any defective performance and alleges that the delay was due to an order from the War Production Board which prohibited defendant, the contractor, from proceeding with the contract, and states a counterclaim in the sum of $370 by reason of work done on the premises in pursuance of the contract.

The case came up for trial before a jury. Before any testimony was taken on the alleged breach of the contract it developed that at the time the contract was executed on October 15, 1942, there was in force an order of the War Production Board entitled "Conservation Order L-41, as amended September 2, 1942", which prohibited any residential construction exceeding in cost $200, without first obtaining authority from the War Production Board.* It developed further that defendant began construction under the contract but ceased within a few weeks thereafter, having run into the difficulty of obtaining material without priorities. Plaintiff, as late as January 27, 1943, received a telegram from the Regional Compliance Chief of the War Production Board in Philadelphia, advising plaintiff that the construction begun was in violation of Conservation Order L-41 and demanding immediate dis-

---

* Conservation Order L-41: (a) *Definitions.*

(a-2) "Construction" means the erections, construction, remodeling or rehabilitation of any buildings, structure or project, or additions thereto or extensions or alterations thereof . . .

"(b) *Prohibited construction.* No person shall begin construction or order, purchase, accept delivery of, withdraw from inventory or in any other manner secure or use material or construction plant in order to begin construction, unless the construction is within one of the following classes: . . .

"(b-7-i) The construction is residential (but not multiple residential) or is specifically listed on Schedule B, attached hereto, and the estimated cost is less than $200."

continuance. Subsequently, the board, being convinced there was no wilful evasion of the order, granted permission and the alterations were completed by another contractor.

It appearing to the trial judge that the contract was illegal and that the difficulties of the parties arose as a result of the illegality of the contract, he directed the jury to bring in a verdict for defendant on plaintiff's claim, and a verdict for plaintiff on the counterclaim of defendant. Plaintiff has filed a motion for new trial, contending that the contract was not illegal since ultimately authority was obtained and the alterations were completed.

The legality of the contract must be judged as of the time it was made. Admittedly at that time it was illegal to proceed with this construction without first obtaining the necessary authority. The legality or the constitutionality of the act of Congress which authorized the creation of the War Production Board is not questioned. Congress provided a heavy penalty for a violation of the board's orders. It was in the National interest that all construction which was not essential, directly or indirectly, to the successful prosecution of the war, and which involved the utilization of labor, material, or construction plant urgently needed in the war effort, be deferred for the duration of the emergency.

The parties by their contract sought to defeat this National interest and executed a contract for construction work which was prohibited. The effect of the suit, therefore, was a request by each of the parties for damages for not performing a contract which was in violation of the law. A court cannot lend itself to the enforcement of an illegal contract.

Counsel for plaintiff has argued that there was nothing illegal in the contract itself, as shown by the authority and the priorities subsequently obtained. This is

judging legality by subsequent events after the necessary requirements of the law had been met. Legality of a contract is determined as of the date of its execution or the date for performance of the contract executed. A contract may not be illegal in itself but recovery will be denied where one of the parties required a license for performance. In Hazle Drug Co., Inc., v. Wilner et al., 284 Pa. 361, which involved an action to recover for a sale made by an unlicensed person, the court held (p. 367):

"It follows that the sale in question, without a state license, was in violation of law, and, hence, there can be no recovery in this case; for the law will not lend its aid to enforce an illegal contract, especially one made in violation of a penal statute."

In Digestive Ferments Co. v. American Chemical Laboratories, 80 Pa. Superior Ct. 373, which involved a violation of the Federal Food and Drugs Act, the court disallowed recovery, holding (p. 374):

"Whenever it appears that the plaintiff's claim rests upon an illegal foundation, the court will not lend its aid to enforce it . . ."

The policy of the law is strict and recovery is not allowed on a quasi-contractual basis if the contract itself is illegal. See Jackson, Assignee, v. Conneautville Borough School District, 280 Pa. 601, 605.

Plaintiff has contended that the illegality of the contract was not pleaded although the affidavit of defense does state that defendant was not able to continue the work by reason of the order of the War Production Board. In all probability defendant did not want to plead illegality directly because he himself counterclaimed for damages by reason of his work under the contract. In any event, illegality need not always be pleaded. A court will of its own motion take note of such illegality and will not allow the use of the court to defeat a public policy. Nor was the trial judge required, as contended by counsel for plaintiff, to expend

time in hearing the entire case when the illegality of the contract was apparent. In Waychoff et al. v. Waychoff, 309 Pa. 300, where similar contentions were made, the court said (p. 308) :

"What, then, should the court below have done, and what should we do? Having before it a contract which was irremediably bad, because offending against public policy, the court below should have refused to proceed with a case based solely upon it, and should have dismissed the proceedings of its own motion. This is the duty of every court, whether of first instance or appellate."

The motion for new trial is, therefore, refused.