Battle, J.
 

 The pleadings in this cause present for consideration, a question which has not hitherto, so far as we know, been decided in this State. The question is, whether a contract between a father and son, made during the pendency of a suit against the father, where the son agrees to defend the suit for the father in consideration of receiving a part of the property in controversy, in case of success, is void, as coming within the prohibition of the common law against maintenance and champerty? We have given to the subject that attention to which its importance, as well as its novelty, requires, and our reflections have brought-us to the conclusion, that the contract is against the settled policy of the law, and therefore cannot be upheld. Sergeant Hawkins, whose definition of these offen*
 
 *104
 
 ees is adopted, mainly, by all the later writers on tbe subject, says, that “maintenance is commonly taken in an ill-sense, and in general seemotk to' signify an unlawful taking in hand, or upholding of quarrels or sides, to the disturbance or hindrance of common right.” Maintenance in a court of justice, is “where one officiously intermeddles in a suit, depending in any such court, which no way belongs to him, by assisting either party with money, or otherwise, in the prosecution or defence of any such suit.- 1 Hawk. P. C. ch. 27, Tit. Maintenance. “Champerty is the unlawful maintenance of a suit in consideration of some bargain to have part of the thing in dispute, or some profit out of it.” Ibid. Tit. Ohampei'ty'. These offences are of the same nature, the latter being an aggravated species of the former, and are both-punishable at common law, as well as forbidden by various statutes. 1 Hawk. P. C. Title, Maintenance,Sec. 38; Champerty, Sec. 1; Roscoe’s Cr. Ev. Title Maintenance, &c; 4 Black. Com. 135.
 

 Champerty being an offence thus prohibited at common law, as well as by statute, any contract or bargain, inte which it enters as one of the elements, must necessarily be void, as being founded upon an illegal consideration. Accordingly, we find that in England-, the courts, both of law and equity, have refused to give' effect to such contracts,- and the latter courts have even given relief against instruments, which they said savoured of champerty. Thus at law it was held, that an agreement to communicate such information as should enable a party to recover a sum of money by action, and to exert influence for procuring evidence to-substantiate the claim, upon condition of receiving a portion of the sum recovered, was illegal. Stanley v. Jones, 7 Bing. 369, (20 Eng. C. L. Rep. 165.) So in- Equity,where a bill was filed to set aside an agreement made by a seaman for the sale of his chance of prize money, that eminent Judge, Sir William Grant, Master of the Rolls, ex
 
 *105
 
 pressed the opinion, that the agreement was void, from the-Beginning, as amounting to champerty, viz: the unlawful maintenance of a suit in consideration of a bargain for a part of the thing, or some profit out of it. Stephens v. Bagwell, 15 Ves. Jnn. 139. In a later case before Lord Chancellor Eldon, certain beneficial contracts and conveyances obtained by an Attorney frgm his client, during their relation as such, and connected with the subject of the suit, being also liable to the charge of champerty, wore decreed' to stand as a security only, for what was actually due. — - Wood v. Downes, 18 Ves. Jun. 76. Lord Eldon,, in delivering his opinion, referred to the case of Strachan v. Browden, 1 Eden. 30, decided by Lord Nottingham, in which he set aside a bond given to secure double the amount subscribed, to assist a poor mam to recover an estate, upon condition to have nothing if the suit failed, the Chancellor observing, that though not strictly champerty, it was very ' near it.
 

 In some of our sister States, champerty and maintenance1. have been decided to be offences at common law, and contracts infected with them have been declared illegal and; void. Burt v. Place, 6 Cowen’s Rep. 431, was a case where an agreement to aid in defending a suit, made with one who was not licensed as Attorney or Counsel, was adjudged illegal and void for maintenance-, that being both
 
 malum in se
 
 and prohibited by statute in .New York.— Thurston v. Percival was decided in Massachusetts. At the trial, it appeared that the plaintiff, who lived in .that State, had been employed as an Attorney and Counsellor by the defendant, to aid him in recovering a large sum of money in a suit, which was prosecuted in the State of New York. After an expensive litigation, the defendant recovered a judgment for if29,734, which was satisfied by a compromise, by which he received $>20,000. The plaintiff was constantly engaged in forwarding the suit, procuring evi
 
 *106
 
 dence, and corresponding with .the defendant’s counsel in New York, and he made several journeys to New York, to consult with the defendant’s counsel there, and to attend to ■the argument of the case, hut he did not act as an advocate, not being allowed to do so by the laws of that State. The plaintiff produced in evidence a written agreement made in Massachusetts, by virjjie of which he was to receive for all his services, above described, ten
 
 per
 
 cent upon the sum which should be recovered. This was objected to, as being unlawful, and was rejected. The court held, that though, the plaintiff might recover upon a
 
 quantum meruit,
 
 for his services before the agreement was entered into, yet the agreement itself was unlawful; that it came within the description of champerty, which all the ablest uniters on criminal law declared to be an offence at common law; and that, though it had reference to a suit in the State of New York, the presumption was, that it was against the law of that State, in the absence of any proof to the contrary. 1 Pick. Rep. 415. This case was referred to with approbation, in the subsequent one of Lathrop v. The Amherst Rank, 9, Metcalf 489, where it was held, that an agreement between the plaintiff and defendant, that the plaintiff should prosecute and manage the defendant’s suits at law, as agent, and receive for his services a certain
 
 per cent
 
 upon the amount that might be recovered, and that, if nothing ■was recovered, his expenses only should be paid, amounted to champerty, and was so far illegal and void, that the plaintiff, after obtaining judgment for the defendant, could not maintain an action on it. In delivering their opinion,, the Court say, “ it was suggested in the argument, that the facts here shown do not bring the case strictly within the definition of champerty, as the plaintiff was not to conduct the suit, wholly at his expense, but was, in the event of a failure to sustain the action, to be remunerated for his actual expenses. It is true, that some of the elementary
 
 *107
 
 books, in defining champerty, say, that the champertor is to carry on the suit at his own expense, as 4 Black. Com. 135; Chitt. Con., (5th Am. Ed.) 675. Other hooks of equal authority omit this part of the definition, as 1 Hawkins, ch. 27, Tit. Champerty ; Co. Litt. 368 b.” See further on this subject, 2 Story’s Eq. Jur., secs. 1048 and 1049, and the cases referred to in the notes.
 

 Erom the brief review of the leading cases and authorities on this subject, it manifestly appears, that champerty is an offence at common law, independently of any statute, not only in England, hut in some, if riot all, the States of this Union, which derive their unwritten law from, the same source. It appears further, that every contract or agreement made, into which champerty .enters as a consideration, is illegal and void. Hence, we conclude that the same doctrine prevails in this State, where it is expressly enacted,
 
 “
 
 that all such parts of the common law, as were heretofore in force and use, in this State, or so much of the said common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State, and the form of government therein established, and which has not been otherwise provided for in the whole or in part, not abrogated, repealed or become obsolete, are hereby declared to he in full force.” 1 Rev. Stat. ch. 22.
 

 It is true, that this particular point.has not yet been expressly decided by our Courts, so far as we can learn from our reports, but in the case of Falls v. Carpenter, 1 Dev, and Bat. Eq. 237, where certain assignments of an interest in lands were objected to, on the ground of maintenance or champerty, the Court said, that they did not come within-the objection, without expressing or intimating that the common law doctrine, in relation to those offences, was not in force in this State. See also the case of Martin v. Amos, 13 Ired. Rep. 201, where it was held, that a bond, with the conditions that the plaintiffs' should <{ hreak the-
 
 *108
 
 ■will ” of a deceased person, of -whom the obligors were next of kin, or “ if they failed to break the will, should pay all the costs of the suit that shall be brought,” is void, on the ground of maintenance, and as being against public justice.
 

 The result of our argument is, that the agreement made between the defendant, William R. Strong, and his father, during the pendency of the suit, for the slaves mentioned in' the pleadings, whereby the said defendant was to have one-half of the said slaves, in case of a successful defence, was founded .upon the consideration of champerty, and is therefore illegal and' void, unless the near relationship of the parties prevents the application of the law to their case.
 

 As to the milder offence of maintenance, “ it seems to he agreed (says Hawkins’ Book 1, ch. 27, sec. 26,) that whoever is any way of kin or affinity to either of the parties, so long as the same continues, or hut related to him, by being his godfather, may lawfully stand by him at the bar, and counsel and assist him, and also pray another to he counsel to him; hut he cannot justify laying out any of his own money in the cause, unless
 
 he
 
 he either father or son, or heir apparent to the parly, or the husband of an heiress.” So Blaokstone says, in the fourth hook of his commentaries, page 135, “ a man may maintain the suit of his near kinsman, servant, or poor neighbor, out of charity and compassion, with impunity.” It is evident, from those authorities which have been adopted, and followed by all the late writers on the criminal law, that persons standing towards each other in the near relation of father and son, may maintain and assist each other in their suits, by their money, their services, and their influence. Such is the dictate of those feelings of affection and regard which the God of nature has placed in the breasts of parent and child, and the common law has wisely abstained from attempting to control them. The question remains, can that support and assistance, which ought to spring from the purest and best
 
 *109
 
 feelings of humanity, become the subject of traffic? — of bargain and sale ? Can a son, before he comes to the aid of his father — perhaps a sick and dying father — when sore •pressed by a lawsuit, stipulate for half the fruits of success ? We have not as yet been able to find any such exception to the common law of champerty. A son may defend his parent, if forcibly attacked in his person or property, and may repel force by force, yet he cannot strike for revenge, .■nor, as we 'Conceive, for money or other property. Certainly the father himself could not justify a blow under the plea of
 
 soil assault demesne
 
 where he had hired his adversary to assail him. If the son would not be justified when striking for defence, not under the promptings of natural affection, but -for reward, his act -being unlawful, no agreement between his father and himself founded upon such consideration could be sustained. But, whether this be so or not, we think .there is no doubt that a conveyance from a father to a son of land, while another person was in the adverse possession-of it, would not pass the legal title, and from the analogy to this, we conceive that a-se-n, who bargains for a portion-of what maybe gained or saved in his father’s suit at law, as the price of his assistance, -cannot be exempted from the operation of the law against ah offence deemed so • odious in others. See 4 Black. Com. 135.
 

 In taking this view of the -common law in -relation t© champerty, it has not escaped our attention, that, in ’the construction of the Statute of 28 Edward L, ch. 11, passed for the purpose of increasing the penalties attached to this offence, it was held,that no conveyance or promise thereof, .relating to lands in suit, made by a father to his.son, or by any ancestor to his heir -apparent, is within .the .'Statute, ■ since it only gives them the .greater encouragement to do what by nature they are bound to do.” 1 Hawk. P. C. ch. 27, Tit. Cham. sec. 18. This construction necessarily fol•lows, from the very words of .the exception contained in the
 
 *110
 
 last.clauseof
 
 the
 
 Statute:
 
 “Mes m ees ease nest mye ee entender, que home nepoit aver cou/nsaile des countours, et ■ des sages gents pur son donent ne de ses proehiene amies,”
 
 2 Coke’s Inst. 568. Lord Coke translated
 
 “ de ses proehiene
 
 amies” to mean “of their next blood,” and of course it excluded from the penalties of the Statute, gifts from a father to his son, pending the suit. So far from proving our view of the common lav to be incorrect, it the rather sustains it, by showing that there was a necessity for inserting the exemption in the Statute.
 

 But the counsel for the defendant contends that the plaintiffs cannot have the relief which they seek, of having the agreement between the defendant William and his father, declared void, and removed out of their way, because they have no special prayer to that effect. To this it is successfully replied, by the counsel for the plaintiffs, that their bill contains a general prayer, under which the specific relief may be given, because it is not inconsistent with their special prayer, and is sustained by the admitted allegations of the bill. 1 Madd. ch. Pr. 171; Adams’ Eq. 309; Mit. ch. Pl. 39.
 

 The plaintiffs are entitled to a decree for an account, upon the principles set forth in this opinion.
 

 Decree accordingly.