MARTIN LANGDON v. JAMES CONLIN.

FILED JANUARY 21, 1903. No. 12,537.

Commissioner's opinion, Department No. 2.

Attorney at Law: CONTRACT: PROCURER: THIRD PERSON: DIVISION OF FEES WITH PROCURER: PUBLIC POLICY. A contract between an attorney at law and one who is not such an attorney, by which the latter agrees to procure the employment of the former by third persons for the prosecution of suits in courts of record, and also to assist in looking after and procuring witnesses whose testimony is to be used in the cases, in consideration of a share of the fees which the attorney shall receive for his services, is against public policy and void.

ERROR from the district court for Cuming county. Action on contract for services in securing employment of defendant as an attorney at law. Tried below before GRAVES, J. *Reversed and dismissed.*

*Martin Langdon,* for himself, and *Constantine J. Smyth* and *Milton McLaughlin,* with him.

*Anderson & Keefe, contra.*

Syllabus by court; catch-words by editor.

OLDHAM, C.

In this case the plaintiff in the court below brought his action against the defendant alleging, among other things, that the defendant was a resident and practicing attorney of Omaha, Nebraska; that "on or about the 1st day of November, 1893, plaintiff, at request of defendant, entered into the services of the defendant to get parties in this and adjoining counties, or from any place, who wished the services of an attorney for litigation or for advice, to employ said defendant as their attorney, and said plaintiff was also to assist the defendant in looking after and procuring proper and legitimate witnesses, whose testimony was to be used in said cases; that for such services the defendant was to pay to plaintiff twenty-five per cent. of the fees charged by the defendant, Martin Langdon, in said cases; that said fee of twenty-five per cent. was to be due and payable from the defendant to the plaintiff as soon as the attorney fees in said cases brought by virtue of the above contract were due and payable to the defendant, Martin Langdon; that the plaintiff was to enter upon his duties under said contract immediately after the same was entered into as above set forth; that the plaintiff did enter upon said services at once and continued to work for said defendant under said contract until about the 1st day of December, 1898; that on or about the 10th day of February, 1894, Bridget McGreavy, guardian of John Mc-Greavy, insane, through the advice and influence of plaintiff, employed said defendant, Martin Langdon, as her attorney to bring an action for her as such guardian against W. G. Waters and others, to set the conveyance aside, for her ward, made by him to said W. G. Waters and others, the land in said conveyance being situated in Cuming county, Nebraska." The petition then sets out that after Bridget McGreavy, as guardian, had employed the defendant, the plaintiff assisted defendant in procuring legitimate witnesses, testimony and evidence to be used in behalf of said Bridget McGreavy in the district

court of Cuming county, Nebraska; that the case was
finally adjudicated and settled by the defendant as attor-
ney for the said Bridget McGreavy; that the defendant
received the amount of $700 as an attorney fee in said
cause, and that by reason of the contract between plain-
tiff and defendant, plaintiff was entitled to the sum of
$175 of this fee from the defendant. The defendant filed
an answer to this petition, denying that he ever entered
into such a contract, and alleging that the contract was
against public policy, and other special defenses which
need not here be noticed. On issues thus formed there
was a trial to a jury, verdict for plaintiff, judgment on the
verdict, and defendant brings error to this court.

Numerous errors in the proceedings of the cause in the
court below are called to our attention in the brief of
plaintiff in error, only one of which it will be necessary to
discuss; and that is whether or not this contract is against
public policy and good morals and therefore void. The
substance of the contract is that the plaintiff, not an at-
torney at law, made an agreement with an attorney and
counselor at law by which he was to procure litigants to
employ the attorney, and procure legitimate witnesses to
testify in behalf of the clients which he had solicited and
persuaded to employ the defendant, and that as compensa-
tion for such services he was to receive twenty-five per
cent. of the fees earned by the defendant. Courts should
only declare contracts void as against public policy
when expressly or impliedly forbidden by the paramount
law, or by some principle of the common law, or by
the provisions of a statute. What the public policy is
must be determined by the constitution, the laws, the
course of administration, and decisions of the courts of
last resort of the states. *License Tax Cases,* 72 U. S. [5
Wall.], 462, 469, 18 L. Ed., 497, 500; *Lux v. Haggin,* 69
Cal., 255, 308. Hence, to determine what the public policy
of this state is with reference to contracts of the nature of
the one at issue it is necessary to first examine such legis-

lative enactments of this state as are declarative of the rights and duties of attorneys and counselors at law.

Section 1, chapter 7, Compiled Statutes,* provides that "no person shall be admitted to practice as an attorney or counselor at law, or to commence, conduct, or defend any action or proceeding in which he is not a party concerned, either by using or subscribing his own name, or the name of any other person, in any court of record in this state, unless he has been previously admitted to the bar by order of the supreme court, or of two judges thereof," etc. Section 2 then provides for the examination of candidates for admission to the bar. Section 3 provides for the admission of practicing attorneys from other states. Section 4 requires that every attorney shall take an oath to support the constitution of the United States, the constitution of the state, and to faithfully discharge the duties of an attorney and counselor. Section 5 provides, among other things, that it is the duty of attorneys and counselors "to maintain the respect due to the courts of justice and to judicial officers. II. To counsel or maintain no other actions, proceedings, defenses, than those which appear to him legal and just, except the defense of a person charged with a public offense. * * * VI. Not to encourage the commencement or continuance of an action or proceeding from any motive of passion or interest." Section 6 provides for the disbarment of attorneys who are guilty of deceit or collusion, and consent thereto, with the intent to deceive a court, or judge, or a party to an action; and section 7 defines the powers of attorneys with reference to the execution of bonds for appeal and other papers necessary and proper for the prosecution of a suit, and confers the right to bind the client by agreement in respect to any proceeding within the scope of his proper duties and powers, and the right to receive money claimed by the client during the pendency of the action before his discharge. Section 8 provides a

---

* For provisions in regard to attorneys, see 2 Cobbey, Annotated Statutes, p. 1396, ch. 5.

Langdon v. Conlin.

lien for his services, and section 13 makes it the duty of an attorney to indorse his name on any original paper filed in the proceeding.

Even a cursory examination of these excerpts from the statute is sufficient to plainly indicate that it was the policy of the legislature of this state to absolutely exclude every one who has not complied with the provisions of chapter 7, *supra,* from engaging either directly or indirectly in the practice of law in any court of record in this state in any case in which such person is not a party in interest. It is also apparent that it was the policy of the legislature to fix a high standard of professional ethics to govern the conduct of attorneys in their relations with clients and courts and to protect litigants and courts of justice from the imposition of shysters, charlatans and mountebanks. It seems to us that the contract in issue is but a thinly veiled subterfuge by which the plaintiff, who it is conceded was not a member of the bar, and who had never complied with any of the provisions of chapter 7, *supra,* for the purpose of authorizing him to engage in the practice of law, undertook to break into the conduct of proceedings in a court of record, to which he was not a party, by attempting to form a limited and silent partnership with one who had complied with the provisions of the law and was entitled to the emoluments of the profession. Under a statute with no more stringent regulations governing the practice of law than our own, a contract on all fours * with the one in the instant case, was declared void, as against public policy and good morals, in *Alpers v. Hunt,* 86 Cal., 78, 9 L. R. A., 483, 21 Am. St. Rep., 17, 24 Pac. Rep., 846. The case is supported in principle by the holdings in *Burt v. Place,* 6 Cow. [N. Y.], 430; *Munday v. Whissenhunt,* 90 N. Car., 458.

Where, as in the case at bar, a part of the consideration of the contract in issue was an agreement to furnish evidence in litigation to be commenced, the supreme court of

---

* This expression **may be criticised, but** Cicero was its author.— **W. F. B.**

New York, in *Lyon v. Hussey*, 82 Hun, 15, 16, 31 N. Y. Supp., 281, said: "It is clear that such a contract is against public policy. The recognition of contracts of this character, would be the introduction of all sorts of fraud and deception in proceedings before courts of justice, in order that parties might receive compensation out of the results of their successful manufacture of proofs to be presented to the court, thus holding out a premium upon subornation. The mere statement of the proposition seems to show that such a contract could never be recognized in any court of justice." See also *Lucas v. Allen*, 80 Ky., 681; *Getchell v. Welday*, 4 Ohio Dec., 65.

We are therefore of the opinion that the contract on which this cause of action is founded is against public policy and good morals, and recommend that the judgment of the district court be reversed and that plaintiff's petition be dismissed.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the petition dismissed.

REVERSED AND DISMISSED.

NOTE.—*Contingent and Exorbitant Fees—Legal Ethics.*—As to the ethics of compensation for professional services, see 16 American Law Review, 240. For an excellent article on contingent and exorbitant fees, see 22 American Law Review, 390. See, also, The Ethics of Compensation for Professional Services—an address before the Albany Law School—and An Answer to Hostile Critiques, by Edwin Countryman. Albany: W. C. Little & Co., 1882.—W. F. B.