## HENRY HOLLAND v. T. D. SHEEHAN and Others.[1]

July 9, 1909.

Nos. 16,146—(171).

**Maintenance—Contract against Public Policy.**

    A contract between a layman and a lawyer, by which the former undertakes and agrees, in consideration of a division of the fees received by the latter, to hunt up and bring to the attorney persons having causes of action against railroad companies for personal injuries, is contrary to public policy and void.

**Parties in Pari Delicto.**

    In such contracts the parties are in pari delicto.

Action in the district court for Ramsey county against T. D. Sheehan and two railway companies for an accounting on a partnership contract between the plaintiff and defendant Sheehan. A demurrer to the complaint by defendant Sheehan was overruled, Hallam, J., and he was allowed to answer. The case was tried before Olin B. Lewis, J., who found the partnership contract to be void and that plaintiff was entitled to no relief. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

[1]Reported in 122 N. W. 1.

*Edward G. Rogers* and *George Nordlin,* for appellant.
*Thos. C. Daggett,* for respondent Sheehan.

BROWN, J.

On the thirtieth of November, 1906, plaintiff and defendant entered into the following contract in writing, namely:

"This agreement, made and entered into this 30th day of November, 1906, by and between T. D. Sheehan and Henry Holland,

"Witnesseth: It is hereby agreed by and between each of the parties above named, respectively, that in reference to all claims and cases handled by suit or settlement by the said T. D. Sheehan or Henry Holland, from the date of this instrument, that the proceeds of all litigation, either by settlement or suit, shall be divided equally, one-half, between the said parties to this said agreement.

"It is also further agreed all expenses, including said Holland's expenses on the road, and all expenses that may be incurred by office, and legitimate expenses necessary for carrying on the said business, shall be shared equally by and between the said parties, and that the expenses shall first be deducted from all the settlements made in the carrying on of said business.

"T. D. Sheehan.
"Henry Holland."

The agreement, as illuminated by the evidence, discloses the following facts: Plaintiff is a layman, following, so far as involved in this case, the occupation of discovering persons who had received personal injury at the hands of railroad companies and others, and inducing them to intrust their claims for compensation to him and his associate, Sheehan, for suit, adjustment, and settlement, upon the basis of a division of the amounts received from the railroad or person liable. Sheehan is an attorney and counselor at law, practicing in the city of St. Paul, and the terms of the contract required of him the prosecution of all claims brought in by plaintiff upon the agreement that each should share equally in the profits resulting from litigated or settled cases. When clients were brought in, Sheehan made an independent contract with them, specifying the terms of his employment and the proportion of the recovery to be alotted to him for his services, usually from one-fourth to one-half. Plaintiff, by the

agreement, was to assist in the preparation of the cases for trial, in looking up evidence and other necessary details, though, not being an admitted attorney, he was not required or expected to take part in the court proceedings. A large number of persons with grievances against railroad companies were discovered by plaintiff, and, acting under the agreement, he conducted them to the office of defendant, who thereafter managed their cases with success, collecting and receiving large sums of money as compensation for their injuries, dividing with plaintiff the compensation received for his services. Finally, however, defendant repudiated the contract and declined further to be bound by it, and plaintiff brought this action for an accounting respecting moneys received by defendant prior to the repudiation. The trial court found the facts substantially as here outlined, held that the contract was illegal and void, and directed judgment for defendant. Plaintiff appealed from an order denying a new trial.

The only question presented is whether the court below rightly held the contract void and unenforceable. The findings of the trial court are all sustained by the evidence.

Illegality vitiates contracts of every description, and the courts decline to enforce them. Illegality, within the rule, includes agreements in violation of some prohibitive statute, in violation of the express rules of the common law, or contrary to public policy. The second and third are so closely related as to be in particular instances indistinguishable; for the common law, and public policy, other than that evidenced by statutory enactments, are often inseparably blended together. Parsons v. Trask, 66 Am. Dec. 502, 506, note.
. Formerly a distinction was made in determining the question whether contracts were illegal between acts mala prohibita and those mala in se; but the old rule no longer obtains. Either, under all modern authorities, nullifies the contract. Gibbs v. Consolidated Gas Co., 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979; Swanger v. Mayberry, 59 Cal. 91. Contracts mala in se include all those of an immoral nature, iniquities in themselves, and those opposed to sound public policy; and, where both parties are in pari delicto, neither as a general rule will be accorded relief by a court of justice. The exceptions to the rule are well defined. 9 Cyc. 551, and cases. The

term "public policy," as applied to this subject, is comprehensive, and covers a wide range, whether evidenced by the trend of legislation, judicial decisions, or the principles of the common law. It embraces all acts or contracts which tend "clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel." Goodyear v. Brown, 155 Pa. St. 514, 518, 26 Atl. 665, 20 L. R. A. 838, 35 Am. St. 903.

The contract in the case at bar is one between an attorney and a layman, and without stopping to consider whether expressly prohibited by statute, either as to the attorney or the layman, we take up the question whether it is void as against public policy. That it is we entertain no serious doubt. That conduct by a layman in stirring up litigation, searching out persons who have received some injury to their person or property, and inducing them to intrust their cause to the solicitor, or an attorney of his selection, on a contingent fee basis, tends to disturb confidence in the administration of justice and to undermine that sense of security for individual rights which every citizen has the right to feel, and is as obnoxious to sound public sentiment as when champerty was a crime at common law, is too obvious to require extended discussion.

As remarked by Judge Mitchell in Gammons v. Johnson, 76 Minn. 76, 81, 78 N. W. 1035: "The general purpose of the law against champerty and maintenance and barratry was to prevent officious intermeddlers from stirring up strife and contention by vexatious or speculative litigation, which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of the law. All contracts or practices which necessarily and manifestly tend to produce these results ought still to be held void on grounds of public policy." It becomes all the more odious when participated in by a lawyer and a layman; the latter agreeing to "find the cases" and the former to conduct them through the courts. In such cases both are equally guilty, and neither should be permitted, in a court of justice, successfully to assert alleged rights accruing from the iniquitous agreement. Huber v. Johnson, 68 Minn. 74, 76, 70 N. W. 806,

64 Am. St. 456; Gammons v. Johnson, 69 Minn. 488, 72 N. W. 563; Gammons v. Gulbranson, 78 Minn. 21, 80 N. W. 779.

The precise situation has been presented to other courts of the country with different results; but the weight of reason and principle sustains our view. In Meguire v. Corwine, 101 U. S. 108, 25 L. Ed. 899, it appeared that defendant, in consideration that plaintiff would procure his appointment to prosecute certain cases, and in consideration, also, of plaintiff's assistance in the litigation, agreed to pay plaintiff one-half of what he should receive for services rendered in the litigation. The court held the contract contrary to public policy and void, and, though plaintiff fully performed his part of the agreement, and defendant received something like $30,000 for his services, refused to require him to account. The case is directly in point. In Langdon v. Conlin, 67 Neb. 243, 93 N. W. 389, 60 L. R. A. 429, 108 Am. St. 643, 2 Am. & Eng. An. Cas. 834, the Nebraska supreme court held that a contract between an attorney and a layman by which the latter agreed to procure the employment of the former by third persons for the prosecution of suits in the courts, and also to assist in looking up the necessary evidence, in consideration of a share in the attorney's fees, was against public policy and void. In the course of the opinion the court referred to the state statutes, and therefrom declared that it was the plain policy of the legislature to exclude all persons not licensed attorneys from directly or indirectly practicing in any of the courts of the state, and that for one not an attorney to attempt to break into the practice by a silent partnership with an attorney was a violation of the policy of the law. The same may be said of our own statutes on the subject of admission to the bar. Sections 2279, 2280, R. L. 1905.

A similar conclusion was announced by the California supreme court in Alpers v. Hunt, 86 Cal. 78, 24 Pac. 846, 9 L. R. A. 483, 21 Am. St. 17. The supreme court of New York in numerous cases has so declared the law of that state, though the court of appeals took the opposite view in Irwin v. Curie, 171 N. Y. 409, 64 N. E. 161, 58 L. R. A. 830. For supreme court citations see note to Langdon v. Conlin, 2 Am. & Eng. An. Cas. 836. The court of appeals held such a contract valid, and placed the ruling upon the ground that the parties were not in pari delicto; that, though a vio-

lation of the law on the part of the attorney, as to the layman the contract was valid and enforceable. The court, it seems to us, over-looked the important fact that the layman was bound to know the statutory prohibition against the attorney and those restricting the right to practice law to those duly licensed to do so. Guilty intent is not necessary, in order that both parties be in pari delicto. 9 Cyc. 569.

And it seems clear that, where two persons conspire together to do an act forbidden by law to one of them, the doing of it by joint-agreement is a violation of the law as to both. The Colorado and Illinois courts seem also to have adopted the rule laid down by the New York court of appeals (Dunne v. Herrick, 37 Ill. App. 180; Vocke v. Peters, 58 Ill. App. 338; Casserleigh v. Wood, 14 Colo. App. 265, 59 Pac. 1024), though in both states the participation in such a contract would be objectionable, under their statutes, so far as concerns the attorney, and in New York an attorney was disbarred for entering into a similar agreement (In re Clark, 184 N. Y. 222, 77 N. E. 1.) The case of Brown v. Bigne, 21 Ore. 260, 28 Pac. 11, 14 L. R. A. 745, 28 Am. St. 752, involved a contract between laymen by which plaintiff advanced money to assist defendant in conduct-ing certain litigation of his own, and is not in point. The Missouri court, in Kelerher v. Henderson, 203 Mo. 498, 101 S. W. 1083, sus-tained a contract similar to that in the case at bar, though at the same time holding the contract with the client procured by the layman champertous and void. The two positions are inconsistent. The lay-man who procured the client and induced the champertous contract with the attorney was equally culpable with the attorney. The rule of the supreme courts of the United States and of California and Neb-raska is in line with the policy adopted by this court in the Huber case, supra, and seems to us more in harmony with consistent legal principles than the position of the other courts cited.

We are not required to look exclusively to statutory enactments in determining questions of public policy. Constitutions and stat-utes are evidence of the general policy of a state; but when confronted with questions of general public policy, as defined in the books, the courts go beyond express legislation and look to the whole body of

the law—statutory, common, and judicial decisions. Public policy requires of courts of equity protection from unjust and unconscionable bargains, though no statutory authority be granted by legislation. For instance, the right of redemption is inseparably connected with every mortgage, and the courts have held stipulations therein waiving the right void as contrary to public policy. Pritchard v. Elton, 38 Conn. 434; Shobe v. Luff, 66 Ill. App. 414. Statutes of limitation are designed to bring an end to strife and litigation by fixing a time within which resort to the courts must be made, and it has been held that an agreement forever to waive the right to interpose the defense is void. Green v. Coos Bay Wagon Road Co., (C. C.) 23 Fed. 67; Wright v. Gardner, 98 Ky. 454, 33 S. W. 622, 35 S. W. 1116; Kellogg v. Dickinson, 147 Mass. 432, 18 N. E. 223, 1 L. R. A. 346. Also contracts not to resort to the courts for relief, contracts in restraint of marriage, in restraint of the right of alienation, contracts tending towards a breach of confidence or of contractual relations between third persons, and in many other respects. 15 Am. & Eng. Enc. (2d Ed.) 943, et seq., and cases cited.

Contracts or acts tending in the directions just indicated are not expressly prohibited by statute, but on the broad ground of the general public good are not enforced. The intermeddler, the fomenter of litigation, has always been obnoxious, and he has received scant treatment at the hands of the law. The business of bureauing personal injury litigation by a layman under agreement with an attorney to share in the profits is too clearly at variance with and in violation of sound morals and the general policy of the administration of justice to receive our sanction or approval. Such is the contract sought to be enforced in this case, and we hold it contrary to public policy and void.

Order affirmed.