## Jenkins, Trustee, to use, v. Ross

*George Wanger*, for plaintiff; *Larzelere & Wright*, for defendant.

KNIGHT, J., November 27, 1931.—The bill sets forth the following facts:

On or about June 1, 1926, Horace R. Freeston, trading as the Adjustment, Inspection and Appraisal Company, was engaged in the insurance and collection business in Philadelphia. Arthur Freeston was in the employ of Horace R. Freeston, and had entire control of the collection of claims and litigation.

On the said date, June 1, 1926, Horace R. Freeston, through Arthur Freeston, entered into a verbal agreement with the defendant, an attorney at law, by the terms of which Horace R. Freeston was to employ the defendant for one year at fifty dollars per week, in consideration of which the defendant agreed to give legal advice to, and devote his time and attention to, the business of the said Horace R. Freeston, particularly to assist in the collection and prosecution of claims of clients and customers of Horace R. Freeston, under the sole direction of the said Arthur Freeston, and all fees for services or other moneys received by the defendant were to be paid over to the said Horace R. Freeston and become his property.

The employment continued from June 1, 1926, to June 23, 1927, during which time the defendant instituted various suits for the collection of claims for the clients and customers of Horace R. Freeston. During the employment, the defendant was fully paid by Horace R. Freeston, in accordance with the terms of the verbal agreement.

On May 27, 1929, Horace R. Freeston was adjudicated a bankrupt, and Harry L. Jenkins was appointed trustee of his bankrupt estate. On November 13, 1929, the trustee sold and assigned to Matilda J. Freeston, the use-plaintiff, all claims, property, and assets of every description of the said Horace R. Freeston, bankrupt.

The bill then goes on to enumerate a large number of cases in which the defendant is alleged to have collected fees which he failed to turn over to the said Horace R. Freeston, although, under the terms of the verbal agreement, the said Freeston was entitled to the same.

In conclusion the bill prays: That the court order the defendant to withdraw his appearance from any and all cases in which he entered his appearance for clients and customers of Horace R. Freeston, while in the employ of the said Freeston; that the defendant disclose and account for all fees collected by him from or for the clients and customers of Horace R. Freeston; that the defendant surrender and return to the use-plaintiff all papers, documents, files, exhibits, etc., that he may have in connection with the claims or collection of claims for customers of Horace R. Freeston.

The effect of the verbal agreement between Freeston and the defendant was to permit Freeston to practice law through the medium of the defendant. Such an agreement is utterly void under the statute law and common law of our Commonwealth. The Act of April 17, 1913, P. L. 80, makes it unlawful for any person to practice law or hold himself out as a lawyer, or maintain a law office of any kind for the practice of law, without having first been duly and regularly admitted to practice law in a court of record of any county in the state.

That the agreement in this case violates both the letter and spirit of this act is too plain to require discussion. If an individual or corporation can hire a lawyer to represent their clients in court, while they direct the litigation, fix and collect the fees, then the Act of 1913 is not worth the paper it is written on.

Quite aside from the statute, the agreement is illegal and void at common law as against public policy.

"Public policy means the public good. Anything that tends clearly to injure public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel, is against public policy:" Goodyear v. Brown, 155 Pa. 514, 518.

It is obvious that if such agreements as the one in question were tolerated, it would result in serious dangers to the purity of the administration of the law in our courts. All of the moral and scholastic requirements necessary to obtain a license to practice law could be easily evaded, and persons without any qualifications, and under no supervision and restraint, could follow a great profession. The relation of attorney and client would be wholly destroyed, and the lawyer would work under a master who would dictate what should or should not be done; litigation would be fostered and encouraged; legal business could and would be openly solicited; and the ills we are now suffering in this respect would be multiplied. All this would be detrimental to the public good and shake the confidence of the people in their courts. Such practices as those portrayed in this bill have been universally condemned by decent lawyers, honest legislators, upright judges and writers learned in the law, in no uncertain terms.

We have no hesitation in holding the agreement as set out in the bill illegal and void. We have been able to find no case in Pennsylvania in which such an agreement has come before our courts. Counsel for the defendant has cited cases from other jurisdictions, where the courts have considered, and held illegal, similar contracts. These cases are herein set forth for the benefit of those who may be interested: In re Coöperative Law Co., 198 N. Y. 479; In re Bensel, 124 N. Y. Supp. 726; Meguire v. Corwine, 101 U. S. 108; Holland v. Sheehan, 108 Minn. 362; Langdon v. Conlin, 67 Neb. 243, 93 N. W. 389; Alpers v. Hunt, 86 Cal. 78.

Where plaintiff relies upon a contract for an accounting, that contract must be legal and valid, and he who is compelled to rely on an illegal agreement to make out his right to what he asks cannot succeed: Vandegrift v. Vandegrift, 226 Pa. 254. The court will not lend its aid in the enforcement of an unlawful contract but will leave the parties as it finds them: Swing, Trustee, v. Munson, 191 Pa. 582; Vandegrift v. Vandegrift, 226 Pa. 254. As the bill is founded on a contract that is illegal and void, it follows that it must be dismissed.

It is needless to go into the merits of the other prayers of the bill; but even if the contract were legal, it is most difficult to see how a court of equity could compel the withdrawal of an attorney from any case except upon the request of the party on the record whom he represents. Nor is it easy to see how a chancellor could order a return of papers and effects to any one other than the person

to whom they belong, namely, the party to the suit. We will refrain from any comment on the conduct of the defendant; we hope he could have successfully denied the averments of this bill, otherwise he is not worthy of membership in the ancient and honorable profession of the law.

And now, November 27, 1931, the bill is dismissed, at the cost of the use-plaintiff. From Aaron S. Swartz, Norristown, Pa.