## Waychoff et al. *v.* Waychoff, Appellant.

Argued October 3, 1932. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*James J. Purman,* with him *J. I. Hook,* of *Scott & Hook,* for appellant.—Plaintiffs were not entitled to an injunction: Mamoth Vein C. Coal Co.'s App., 54 Pa. 183.

A temporary or interlocutory injunction will not be ordered except upon a clear showing that the plaintiff is entitled to the same and that he will beyond reasonable doubt be entitled to relief on the final hearing of the cause on its merits: Minnig's App., 82 Pa. 373.

If a contract binds the maker to do something opposed to the public policy of the state or nation or conflicts with the wants, interests, or prevailing sentiment of the people, or our obligations to the world, or is repugnant to the morals of the times, it is void, however solemnly the same may be made: Goodyear v. Brown, 155 Pa. 514; Morgan v. Doe, 16 Pa. D. & C. 314.

A contract by an attorney to divide fees with a third person if the latter will procure employment for the former, is contrary to public policy and void: Meguire v. Corwine, 101 U. S. 108; Ormerod v. Hunt, 100 Pa. 561.

An attorney at law cannot create a partnership with a layman: Pittsburgh v. Goshorn, 230 Pa. 212; Kuhn v. Buhl, 251 Pa. 348.

*W. C. Montgomery,* for appellees.—The Philadelphia case was a clear case of a member of the bar employing a runner or agent to procure business for him, a most reprehensible practice.

The present case is one of laymen who have either on their own part, or even in conjunction with a member of the bar, acquired for themselves a legitimate business which has been turned over under a perfectly proper arrangement and understanding to the lawyer member of the group to perform the necessary legal services in connection therewith. There is a clearly defined distinction between the cases.

The subject-matter of the contract has the sanction of the law.

The contract is not champertous: Wright v. Tebbitts, 91 U. S. 252.

Appellees had a right to an injunction: Mammoth Vein C. Coal Co.'s App., 54 Pa. 183; Com. v. Ry., 24 Pa. 159; Kittanning Brewing Co. v. Gas Co., 224 Pa. 129; Minnig's App., 82 Pa. 373.

OPINION BY MR. JUSTICE SIMPSON, November 28, 1932:

By their bill in equity in this case, the two plaintiffs, who are laymen, seek a preliminary injunction against their brother, who is a lawyer, to prevent him from further handling the assets of a partnership entered into between them and him, and for the appointment of a receiver for those assets. The court below, without notice to the defendant, whose office is at the county seat, entered decrees granting these prayers. On this appeal by defendant, a number of questions, supposed to be involved, have been presented with marked ability by counsel on both sides of the controversy. Inasmuch, however, as the partnership agreement, which is the basis

of the suit, cannot be sustained because of the unbending legal rule that all agreements which provide that laymen are to receive from lawyers a portion of their fees, in consideration of procuring the litigation for them, or for assisting in its prosecution, are void because contrary to public policy, we shall limit ourselves to pointing out why we think the rule applies here. That nothing else is needed on this appeal, is frankly stated in plaintiffs' brief as follows: "It is conceded, however, that the contract upon which the bill is founded, must be a lawful contract, if plaintiffs are to prevail."

The relevant provisions of the partnership agreement may be epitomized as follows: It states that defendant "has accepted a number of cases of world war veterans or United States army veterans against the United States of America to recover on their war risk insurance policies or later issued policies, on the ground of total permanent disability," some of which cases are "in the hands of trial attorneys in other districts and states, for purposes of preparation and trial and reducing to judgment and receipt of attorney's fees allowed by law, and [defendant] intends to so place many of such additional cases hereafter," he holding all "said agreements with those attorneys, and the moneys to be received or due, or to become due to him," as well as the fees in the suits which he personally prosecutes, in trust as to 50 per cent thereof for Glenn A. Waychoff, one of plaintiffs, and 25 per cent for the other plaintiff and 25 per cent for himself. It further provides that defendant sells, assigns and sets over to plaintiffs to the extent stated, all fees received by him, and authorizes, desires and directs the attorneys in other districts and states, receiving such cases for prosecution, to pay to plaintiffs their percentages as above set forth, "and [defendant also] agrees to $5,000 as liquidated damages at the suit of any interested party who has just cause to be aggrieved by any act or omission with respect to the above."

It will be noticed that the agreement does not state when or how the claims to be collected came to be placed in defendant's hands. Upon this point plaintiffs say in their brief, however: "The natural inference from the contract, with the surrounding circumstances, construed as a whole, therefore would be that this is the business originally of Glenn A. Waychoff [one of plaintiffs], who, in fact, though it does not appear in the contract, was himself a World War Veteran. The lion's share of the earnings of the partners would not have been mutually conceded to him by the partners in consideration of the 'various services performed' upon any other basis." That is to say, Glenn A. Waychoff, a layman, gathered together these claims, knowing they would have to be prosecuted by a lawyer, and now seeks to farm them out to a lawyer, in consideration of one-half the lawyer's fees. This fact alone, under the principle above set forth, would defeat the right to maintain this bill; for as stated in Kuhn v. Buhl, 251 Pa. 348, "Where a written contract is attacked upon the ground that it is offensive to law and violative of public policy, the substance, not the form, is looked at; the court will not confine its attention to the mere words in which it is expressed, but evidence aliunde the contract is admissible to prove the consideration"; a conclusion stated also in New York & Penna. Co. v. Cunard Coal Co., 286 Pa. 72, 84. If thus considered, a contract is found to violate public policy, no matter what has previously been done regarding the subject-matter specified in it, "the law when appealed to will have nothing to do with it; . . . . . . [so far as it is] executory, [the law] refuses to enforce it:" Pittsburgh v. Goshorn, 230 Pa. 212, 227. Moreover, if plaintiffs were not the gatherers of these cases of the veterans against the government, presumptively, at least, they would have no claim, since the agreement to pay them would be without consideration.

It must be admitted that the public policy above set forth is not approved in all of our sister states. In

Dunne v. Herrick, 37 Ill. App. 180, Vocke v. Peters, 58 Ill. App. 338, Irwin v. Curie, 171 N. Y. 409, and Kelerher v. Henderson, 203 Mo. 498, it is said that such an agreement is void so far as relates to the attorney entering into it, but is valid and enforceable so far as the laymen partners are concerned. If the only question involved was as to the rights of the parties against each other, it would be possible to understand that conclusion, although, as stated in Holland v. Sheehan, 108 Minn. 362, 367, it wholly overlooks the rule that lawyers and laymen are alike bound to know the law, so far as concerns their rights and liabilities. It seems to us, however, that a better answer is that the conclusion reached in those states wholly ignores the fact that the good of the public at large is the controlling factor. Upon this we have always taken our stand. "A contract against public policy, as distinguished from one merely ultra vires, is absolutely without any force or effect whatever, so that it cannot, under any circumstances, be made the basis of a cause of action:" Pittsburgh v. Goshorn, supra.

It is clear to us that the decisions in Meguire v. Corwine, 101 U. S. 108, Munday v. Whissenhunt, 90 N. C. 458, Alpers v. Hunt, 86 Cal. 78, Holland v. Sheehan, supra, Langdon v. Conlin, 67 Neb. 243, Prince v. Fox, 2 Tenn. Civ. App. (Tenn.) 319, and Morgan v. Doe, 16 D. & C. 314, express the proper rule, and with this view those responsible for 2 R. C. L. 1045, section 127, and 6 C. J. 627, section 117, would seem to agree.

In Langdon v. Conlin, supra, it is said at page 247: "It seems to us that the contract in issue is but a thinly veiled subterfuge by which the plaintiff, who it is conceded was not a member of the bar,......undertook to break into the conduct of proceedings in a court of record, to which he was not a party, by attempting to form a limited and silent partnership with one who had complied with the provisions of the law, and was entitled to the emoluments of the profession." In Alpers v. Hunt,

supra, it is said at page 88: "If such a practice were allowed, an attorney might have a number of undisclosed associates through his agency exercising the functions of an attorney and counselor, and reaping the rewards flowing therefrom, without resting under any of the responsibilities incident to such a position, and possessing none of the qualifications which the law demands and requires." So, too, from Munday v. Whissenhunt, supra, at page 461: "If he may do so, every other person may do likewise; and it is easy to see that the result would be that all manner of combinations and conspiracies would be brought about to prevent and stifle justice, sometimes in one way and sometimes in another. It is a wise, wholesome and necessary provision of the law, justified by the experience of ages, that men shall not interfere in lawsuits in which they have no interest, to help one party or the other in consideration of a part of the fruits of litigation."

Our own cases, while not dealing with this exact question, are, in principle, in accord with those last cited. In addition to the ones already referred to, we may call attention to Ormerod v. Dearman, 100 Pa. 561, 564, where we said: "The law guards with jealousy every avenue to its courts of justice, and strikes down everything in the shape of a contract which may afford a temptation to interfere with its due administration." Also the late case of Morgan v. Doe, supra, where the learned president judge who wrote the opinion clearly states the reasons for the rule as follows: "In our opinion, the agreement is contrary to public policy. The people are concerned in the integrity, responsibility and ethical sense of the legal profession, because upon lawyers, primarily, is dependent the administration of justice. Any practice by which 'runners' or agents are employed to procure business for members of the bar degrades and stultifies the profession and reduces it to the level of hucksters in the market place. Lawyers may attract clients, but they must not seek them by methods properly employed

in the business world. This is not merely a canon of good taste, but a rule that reaches deeply into the heart of legal ethics, for a violation of it is apt to breed objectionable practices. At common law it was an indictable offense to be a common barrator, and observation of current conditions is convincing that the practice of employing laymen to procure business for lawyers is a prolific source of barratry and, therefore, contrary to the public weal. Moreover, laymen are not bound by any professional oath or discipline, nor by the exalted sense of honor which comes from membership in a fraternity whose aim is the lofty one of the pursuit of justice, and, when they have a contingent interest in the spoils of litigation, they are more apt to suborn perjured testimony and to instigate corruption."

The Act of April 28, 1899, P. L. 117, points clearly to this public policy when, in section 2, it declares that it is a crime to violate section 1, which, as amended by the Act of April 17, 1913, P. L. 60, is as follows: "Section 1. Be it enacted, etc., That from and after the passage of this act, it shall not be lawful for any person in any county in the State of Pennsylvania to hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney-at-law, attorney and counsellor-at-law, counsellor, or the equivalent in any language, in such manner as to convey the impression that he is a practitioner of the law of this or any other state, nation, country or land; or in any manner to advertise that he, either alone or together with another person, or persons, has, owns, conducts or maintains a law office, or law and collection office of any kind, for the practice of the law of this or any other state, nation, country or land; without having first been duly and regularly admitted to practice law in a court of record of any county in this Commonwealth."

It is claimed by plaintiffs, however, that title 38, section 551 of the U. S. Code, which provides that "the court, as a part of its judgment or decree, shall deter-

mine and allow reasonable fees for the attorneys of the successful party or parties, and apportion same, if proper, said fees not to exceed 10 per centum of the amount recovered, to be paid by the bureau out of the payments to be made under the judgment," in some way affects the matter. That contention would seem to be that a contract which cannot apply to more than ten per cent of the recovery, in the suit to which it relates, is not against public policy, whereas one for over that percentage would be. This overlooks, however, the fact that the act of congress relates only to a contract between the attorney and the claimant, but is not even relevant to the issue here, which concerns a contract between an attorney and one who is not the claimant.

What, then, should the court below have done, and what should we do? Having before it a contract which was irremediably bad, because offending against public policy, the court below should have refused to proceed with a case based solely upon it, and should have dismissed the proceedings of its own motion. This is the duty of every court, whether of first instance or appellate. In Chester School District's Audit, 301 Pa. 203, 213, we said: "Where a public policy is or may be controlling, however, this court will, of its own motion, take cognizance of the matter, though it was not even suggested in the court below." This alone is sufficient basis for the order we are about to make; which is permitted, moreover, by the Act of May 20, 1891, P. L. 101: Whalen v. Smith Fireproof Construction Co., 296 Pa. 10; Mullin v. Gano, 299 Pa. 251.

The bill in equity filed in this case is dismissed at the cost of appellees, and all proceedings had thereunder are reversed and set aside, without prejudice, however, to the duty of the receiver to account for any moneys received by him under and by virtue of his appointment.