Civil action to recover on contract, heard upon demurrer to complaint.
Plaintiff in his complaint alleges that he and defendant are residents of Madison County, North Carolina; that defendant is an attorney at law engaged in the practice of his profession in said county; that prior to 1 December, 1938, one Charley Chandler, a native and former resident of Madison County, died domiciled in Kentucky, leaving an estate of the value of about $100,000; that "Charley Chandler was the putative father of a daughter born out of wedlock, whom he recognized and regarded as his child, and for whom he had contracted and agreed to make suitable provision out of his estate"; that during his residence in North Carolina prior to moving to Kentucky, said Charley Chandler was a neighbor and friend of plaintiff, and plaintiff had some general knowledge of his plans and promises to provide for his said daughter; that upon the death of Chandler others laid claim to all of his property and refused to share it with his daughter, who was compelled to sue for same.
Plaintiff further alleges:
"7. That plaintiff conferred with defendant in regard to instituting and prosecuting proper legal action to recover from the estate of Charley Chandler, and from those who had taken possession of all of his property, the share thereof which he had promised and agreed to give to his said daughter; and thereupon it was mutually agreed by and between plaintiff and defendant that the defendant would handle such legal action and for his professional services should receive one-fourth part of the amount recovered plus his actual expenses and that the plaintiff for his services in conducting the necessary and indispensable investigations to discover the facts and the names and whereabouts of witnesses and other services required in the preparation of said action for trial should receive one-fourth part of the amount recovered, less his share of expenses advanced and paid out by the defendant.
"8. That in pursuance of said agreement between plaintiff and defendant, and at the special instance, request, and solicitation of the defendant, plaintiff caused the daughter of the said Charley Chandler to call at the office of the defendant in Marshall and to sign the contract prepared by defendant authorizing and directing the institution and prosecution of said legal action and agreeing to pay one-half of the amount recovered therein as full compensation and settlement for services rendered therein by plaintiff and defendant. *Page 328 
"9. That more than a quarter of a century elapsed between the date of the birth of his said daughter and the date of the death of Charley Chandler, during most or all of which time he was absent from the State of North Carolina and residing in the State of Kentucky, and during which time many of the witnesses who knew of his promise and agreement to provide for his said daughter had died or moved away from Madison County, and it was therefore necessary for plaintiff to conduct an extended search and inquiry, to spend much time in travel and to question a large number of people in different sections of the country, and to make two or three trips to the State of Kentucky, in order to discover the facts upon which the defendant could rely in conducting said legal proceedings and prosecute the same to a successful issue, and plaintiff's said services represented the major part of all services rendered in said action and were reasonably worth, and plaintiff earned and was justly entitled to receive one-fourth part of the amount recovered in said action."
The plaintiff further alleges that upon the trial in Kentucky the daughter of Charley Chandler recovered judgment against his estate for $10,000, and later compromised it for $9,000, which defendant received "in his capacity as an attorney and in trust for the daughter of Charley Chandler and this plaintiff, and for himself, according to the respective rights and interests of each . . . under the aforesaid contracts," and is indebted to plaintiff in the sum of $2,250.00, less $50.00 allowance for expense and advancements made.
Defendant in apt time demurred to complaint for that it fails to state a cause of action: (1) In that the contract alleged is contrary to good morals and the public policy of this State, and is illegal and void under the laws of North Carolina. (2) In that it appears upon the face of the complaint "that the services alleged to have been rendered were voluntary upon the part of the plaintiff, that the plaintiff had no interest in the matters in litigation, and that any acts plaintiff alleges he may have done in furtherance of said litigation or assistance to either of the parties thereto was champertous, and that if plaintiff rendered any of the services alleged in the complaint such services were in the nature of maintenance, and that the plaintiff cannot recover for such services if any he rendered."
The court below, upon hearing had by consent at chambers in the courthouse at Asheville, North Carolina, sustained the demurrer.
Plaintiff appeals to the Supreme Court and assigns error.
That the complaint is subject to successful attack by demurrer, we are in accord with the court below.
At the outset it is appropriate to note that the common law offenses of champerty and maintenance have been considered and condemned in this State, notably in these cases: Martin v. Amos (1851), 35 N.C. 201; Barnes v.Strong, 54 N.C. 100; Munday v. Whissenhunt, 90 N.C. 458. Compare Smithv. Hartsell, 150 N.C. 71, 63 S.E. 172.
A review of these cases is deemed pertinent.
In Martin v. Amos, supra, the Court held that a bond executed by defendants for payment of $200 to plaintiffs conditioned that plaintiffs "break the will" of a deceased person of whom defendants were widow and next of kin, "or if they failed to break the will, should pay all the costs of the suit that shall be brought," is void on the ground of maintenance and being against public justice. Nash, J., speaking for the Court, said: "The object of all laws is to repress vice and to promote the general welfare of the State; and no one can be assisted by the law in enforcing demands founded on a breach or violation of its principles. Hence springs the maxim of common law `ex turpi contractu non oritur actio.' It is the public good that allows a contract to be impeached for the illegality of the consideration . . . A defendant therefore . . . may . . . prove that the consideration upon which it was given is illegal, as being immoral or contrary to public policy. Among the latter the most prominent are contracts affecting the course of justice. They are the most prominent because every individual in the community is interested in the pure and upright administration of the laws," and, continuing, "Maintenance is an offense against public justice, and is defined by Justice Blackstone 4 Com., 134, to be `an officious intermeddling in a suit that no way belongs to one by maintaining or assisting either party, with money or otherwise, to prosecute or defend it . . . Champerty is a species of maintenance being a bargain with a plaintiff or defendant to divide the subject in dispute, if they prevail, whereupon the champertor is to carry on the suit at his own expense.' All contracts, then, founded upon either or both of these offenses are absolutely void. In this case . . . there was an officious intermeddling by plaintiffs in a suit that no way concerned them, and assisting the obligors with money in carrying on a suit to be commenced. Such a contract is immoral and illegal, and a court of law cannot lend its aid to enforce it."
In Barnes v. Strong, supra, there was involved a contract between a father and son, made during the pendency of a suit against the father, whereby the son agreed to defend the suit for the father, in consideration of receiving a part of the property in controversy, in case of success. The Court held the contract to be within the prohibition of the common law against champerty and hence void. Battle, J., writing for the *Page 330 
Court, said: "Maintenance in a court of justice is `where one officiously intermeddles in a suit depending in any such court which no way belongs to him, by assisting either party with money, or otherwise, in the prosecution or defense of any such suit.' 1 Hawk. P. C., ch. 27, Tit. Maintenance. `Champerty is the unlawful maintenance of a suit in consideration of some bargain to have part of the thing in dispute or some profit out of it.'Ibid., Tit. Champerty.
"These offenses are of the same nature, the latter being an aggravated species of the former." And, continuing, it is said that from the authorities on the subject, champerty is an offense at common law, and prevails in this State, being retained under the common law statute in 1 Rev. Stat., chapter 22 (now C. S., 970). The Court further cited the case of Lathrop v. Bank, 9 Metcalf, 489, in which the Supreme Judicial Court of Massachusetts stated: "Maintenance and champerty . . . are deemed illegal, not from the consideration that all the expenses of the litigation are to be borne by a stranger, but in reference to the evils resulting from officious intermeddling, and upholding another's litigation by personal services as well as money."
In Munday v. Whissenhunt, supra, Merrimon, J., writing for the Court, said: "One Jones had brought his action in the Superior Court of Alexander County against the testator of the defendants, to recover a tract of land. The plaintiff in this action was in no way a party to or interested in that suit. He was a stranger to it, and not related to the defendant therein. He was not a lawyer, but a layman, and not authorized to manage or defend suits for other people in courts of justice. Nevertheless, he entered into a contract, the substance of which was that the plaintiff in this case should aid the defendant in the action mentioned, in defending and managing his case, and receive as compensation for his services in that respect one-half of the land in controversy, or one half its value, if the defendant should secure it, or if the suit should be compromised, then one-half of whatever might be realized or saved by such compromise; and if the defendant should entirely fail of success, the plaintiff was in that case to get nothing for his services. This comes clearly within the meaning of maintenance and champerty. It was not the business of the plaintiff to advise about and manage law suits, and he had no authority to do so. He interfered in a litigation that in no way concerned him, and engaged to help one of the parties to it (the defendant), exactly how, does not appear, but in some effective way, and to receive as pay for his services one-half of whatever advantage might be realized by his employer. This is precisely what the law forbids. It does not tolerate or permit such interference. If the plaintiff might so interfere in the case referred to, he may do so in any case, and to any extent. If he may do so, every other person may do likewise; and it is *Page 331 
easy to see that the result would be that all manner of combinations and conspiracies would be brought about to prevent and stifle justice, sometimes in one way and sometimes in another. It is a wise, wholesome and necessary provision of the law, justified by the experience of ages, that men shall not interfere in lawsuits in which they have no interest, to help one party or the other in consideration of a part of the fruits of litigation. Such contracts are not only invalid, but it is indictable at the common law to so interfere."
On the other hand, in Smith v. Hartsell, supra, the Court, in opinion byHoke, J., held that an agreement of a party to give aid in the prosecution of a suit in the determination of which he has an actual interest is not invalid for maintenance or champerty. But it is said that: "This position in no way conflicts with the decision of this Court in Munday v.Whissenhunt, 90 N.C. 458."
Furthermore, the policy of the law in this State as to contracts in contravention of good morals or of the public policy of the State is further exemplified in Pierce v. Cobb, 161 N.C. 300, 77 S.E. 350, and in Waggoner v. Publishing Co., 190 N.C. 829, 130 S.E. 609. In the former, in holding certain notes void, payment of which was conditioned upon certain divorce being obtained in a court of competent jurisdiction, the Court, through Walker, J., said: "No contract which is against good morals or the public policy of the State will be enforced by its courts. If the consideration upon which it is based is illegal, the courts will leave the parties where it found them, and will lend their aid to neither of the parties. The law will give no sanction to a transaction which involves the violation of its principles, nor will it afford a remedy to compel either of the parties to perform its obligation . . . When parties are in paridelicto in respect to an illegal contract, and one obtains advantage over the other, a court will not grant relief"; and in the Waggoner case, Stacy,C. J., speaking to the subject, uses this language: "It is undoubtedly the law that whatever contravenes sound morality, or is contra bonosmores, vitiates any contract and renders void any engagement founded upon it. `Ex turpi contractu actio non oritur' was the maxim of the common law and it is still good today. No action can be maintained on an immoral or iniquitous contract. Munday v. Whissenhunt, 90 N.C. 458. The courts will not paddle in muddy water, but in such cases the parties are remitted to their own folly."
Moreover, the courts generally hold that a contract between an attorney at law and a layman whereby the layman, in consideration of a share of the attorney's fee, or something else of value, undertakes (1) to procure the employment of the attorney by a third person to prosecute contemplated litigation, or (2) to furnish evidence to an attorney, who is employed in existing or contemplated litigation, is champertous and contrary *Page 332 
to public policy. 14 C. J. S., 369, C. M., sec. 28; Langdon v. Conlin,67 Neb. 243, 93 N.W. 389, 60 L.R.A., 429, 10 Am. St. Rep., 643, 2 Ann. Cases, 834; Holland v. Sheehan, 108 Minn. 362, 122 N.W. 1, 23 L.R.A. (N.S.), 510, 17 Ann. Cases, 687; Johnson v. Higgins (Del.), 7 Boyce, 548, 108 A. 647; Carey v. Gossom, 204 Mo. App. 695, 218 N.W. 917; Brown v.Durham (Okla.), 53 P.2d 551; Duteau v. Dresbach (Wash.), 194 P. 547, 16 A.L.R., 1430.
In Langdon v. Conlin, supra, a case strikingly similar to that at bar, this headnote epitomizes holding of Supreme Court of Nebraska in this language: "A contract between an attorney and one who is not such an attorney, by which the latter agrees to procure employment of the former by third persons for the prosecution of suits in courts of record, and also to assist in looking after the procuring witnesses whose testimony is to be used in the cases, in consideration of a share of the fees which the attorney shall receive for his services, is against public policy and void."
Also, in Holland v. Sheehan, supra, it is held by the Minnesota Supreme Court that, "A contract between a layman and a lawyer, by which the former undertakes and agrees in consideration of a division of the fees received by the latter, to hunt up and bring to the attorney persons having causes of action against railroad companies for personal injuries, is contrary to public policy and void."
And in Duteau v. Dresbach, supra, the Supreme Court of the State of Washington, holds that "A contract by a layman with an attorney who has taken a case on a contingent fee, to seek out the witnesses and keep in touch with them and assist in every way possible to obtain a judgment, for a share in the fee, is void as against public policy."
Furthermore, there is a well defined rule that an agreement by a layman, who is a stranger in interest or relationship, to carry on the prosecution of a suit for a share in the recovery is champertous and void. This is true whether strictly conforming to the definition of champerty or not. 10 Am.Jur., 561, C. M., 15 16. See, also, Annotations 16 A.L.R., 1433.
Besides, an agreement by a person without prior interest in a claim or controversy becomes champertous or contrary to public policy when it contemplates litigation and, for a share of the recovery, calls for procurement of evidence essential to success. 14 C. J. S., 356, C M., sec. 23.
On the other hand, a contract of employment simply to secure information concerning a case or to ascertain the testimony available for a fixed compensation is generally held not to be in contravention of public policy, and under such circumstances it is immaterial whether the person employed be an attorney at law, a professional detective, or a mere layman. See Annotations 16 A.L.R., 1433, at 1435. See, also, Mfg. Co. v. Bank,145 N.C. 319, 59 S.E. 72. *Page 333 
In the present action, accepting as true the allegations of fact contained in the complaint, and relevant inferences of fact, necessarily deducible therefrom, as we must do in testing by demurrer thereto the sufficiency of the complaint to state a cause of action, Ballinger v.Thomas, 195 N.C. 517, 142 S.E. 761; Toler v. French, 213 N.C. 360,196 S.E. 32; Ins. Co. v. McCraw, 215 N.C. 105, 1 S.E.2d 369; Parksv. Princeton, 217 N.C. 361, 8 S.E.2d 217, this is the case: Plaintiff, a layman, friend and former neighbor of Charley Chandler, knowing that Chandler, formerly a resident of Madison County, North Carolina, and putative father of a "daughter born out of wedlock" more than a quarter of century before, for whom he had agreed to make provision out of his estate, had died in Kentucky, leaving a large estate there which was then claimed by others, who refused to share it with her, and having "some general knowledge" of Chandler's plans and promises in that respect, conferred with defendant, an attorney at law, in regard to a suit by the daughter to recover a share of the estate of Chandler. Whereupon, plaintiff and defendant agreed among themselves that defendant would be the lawyer in the case, and that plaintiff would get up the evidence "required in the preparation of said action for trial," and each would receive a fourth of the recovery. And then, pursuant to that agreement, plaintiff, "at the special instance, request and solicitation of defendant," "caused the daughter of Chandler to call at the office of defendant" and "to sign the contract, prepared by defendant, authorizing and directing the institution and prosecution of such legal action" and agreeing to pay one-half of the amount recovered thereon "as compensation for services rendered by defendant and by plaintiff."
Such a contract between a layman and an attorney at law, in the light of the principles hereinabove stated, is contrary to public policy and void, and will not support a cause of action in this State.
However, it is contended by plaintiff in brief filed in this Court that defendant, by virtue of his office as attorney at law, obtained and holds in trust the one-fourth of the amount recovered in the suit in Kentucky, now claimed by plaintiff. Even so, under the facts as alleged, plaintiff may not profit thereby. This is a matter for the consideration of the daughter of Charley Chandler, in whose behalf the recovery was obtained. She is not now before the Court, and her right, if any, to said fund is not now presented.
The judgment below is
Affirmed. *Page 334